ALBANY,
August, 1820.

CHAMPLIN,
v.
BUTLER.

A. CHAMPLIN *against* T. C. BUTLER.

ASSUMPSIT on a *quantum meruit*, for the wages of the plaintiff, as master of the ship *Lion*, on a voyage from *New-York* to *Canton* and back to *New-York* ; and for the wages of his apprentice during the same voyage. The defendant pleaded *non assumpsit*, with notice of set off. The cause was tried at the *New-York* sittings, in *April*, 1819, before Mr. Justice *Yates*.

The plaintiff produced a formal and absolute bill of sale of the ship from *Minturn & Champlin* to the defendant, for the consideration of 30,000 dollars, without date, but which was proved to have been executed about the 20th of *December*, 1815;—an affidavit made the 22d of *December*, 1815, by the defendant, before the deputy collector of the customs, by which he made oath that he was the true and only owner of the said ship ;—the *register* of the ship of the same date, stating the defendant to be the sole owner ;—the usual letter of instructions from the defendant, as owner, to the plaintiff as master, when about to sail on the voyage, dated *December* 20, 1815 :—also, a letter dated *February* 24, 1817, from the defendant to the plaintiff, on the arrival of the ship off the port of *New-York*, on her return from *Canton*, directing in what manner he should report the ship and cargo in his manifest. The plaintiff also proved, that he had performed the voyage as master of the ship ; that previous to the voyage to *Canton*, she was owned by *Minturn & Champlin*, and had arrived from *Gottenburgh*, under the command of the plaintiff, who took charge as master for the voyage to *Canton* on the 23d of *November*, 1815 ; and on the 20th of *December*, 1815, signed the following contract : "I have this day agreed with *Minturn & Champlin* to take charge of

In an action by the master of a ship, for his wages, against the defendant, as owner, and who held an absolute bill of sale from *M.* as well as a register of the ship, in his own name, the defendant may prove by parol that the bill of sale was given to him merely as collateral security, by way of mortgage.

A mortgagee of a ship, in possession, is liable to the master, for his wages, if the voyage be performed for the benefit of the mortgagee.

But where the master made a special agreement as to his wages, with *M.* the real owner or mortgagor, and with full knowledge of a secret agreement between *M.* and the defendant, who, had no interest in the voyage, but merely lent his name to cover the voyage, for the benefit of *M.* and without receiving any freight or profit, the plaintiff was held bound by his special agreement, and could not waive it, and sue the defendant as owner.

Where there is an express contract for a stipulated amount and mode of compensation for services, the party rendering the services cannot waive the contract, and resort to an action for a *quantum meruit*, on an implied assumpsit.

the ship *Lion*, as master, for one hundred dollars a month, and seven tons privilege."

The defendant offered to prove by parol, that the bill of sale from *M. & C.* to him was intended merely as a mortgage. The evidence was objected to, but admitted by the judge, reserving the question for the Court. The witness testified, that the bill of sale, though absolute in terms, was intended to be a security merely, by way of mortgage, to the defendant, for responsibilities he had entered into for *M. & C.* to a large amount, particularly as surety for them on bonds at the Custom House, and for advances made to *M. & C.* That *M. & C.* being in embarrassed circumstances, the ship was fitted out for the voyage, and the arrangement entered into with the defendant, in the expectation of relieving themselves from their difficulties; and also, to prevent the ship and cargo from being attached by creditors in foreign ports; that the defendant had no interest in the ship or cargo, either as to profit or loss, which might accrue on the voyage; and agreed with *M. & C.* that they should have the exclusive control of the ship for the voyage, and they put on board 110,000 dollars, to purchase a cargo, on their own account, which were shipped in the name of the defendant; that *M. & C.* wrote the letter of instructions to the plaintiff, which was signed by the defendant, who had policies of insurance effected on the ship and cargo, for whomsoever it might concern, and gave his notes for the premium. That the plaintiff, before he sailed, was fully informed of the arrangements between *M. & C.* and the defendant, for covering the vessel and cargo by the defendant's name; and that *M. & C.* owned the cargo, and had paid all the advances for the ship, and were to pay the seamens' wages; that when the ship sailed from *Sandy Hook* on her voyage out, the plaintiff, as master, gave an order on *M. & C.* to pay the pilotage, which was accordingly paid by them. That on the return of the ship to *New-York*, *M. & C.* paid off the crew, and requested the plaintiff to present his bill, which he accordingly gave to them, dated the 12th of *May*, 1817, making them debtors to him for the amount. That *M. & C.* on the 13th of *May*, paid him 500 dollars, leaving a balance due to him of 957

dollars and 37 cents which remained unpaid. That *M. & C.* in
*October* following, were discharged under the insolvent act.

The defendant objected, that the plaintiff having shown
a special agreement for wages, could not recover in this ac-
tion, on the general count for a *quantum meruit ;* but the
Judge reserved the question, and directed the jury to find a
verdict for the whole sum, and they, accordingly, found a
verdict for the plaintiff for 1,091 dollars and 94 cents, subject
to the opinion of the Court on the whole case, which either
party was to be at liberty to turn into a bill of exceptions.

*Anthon,* for the plaintiff, contended, 1. That the evidence
in the case fully proved, that the defendant was the owner
of the ship; and that the register itself was conclusive as to
that fact, in this case. (14 *East,* 230. 2 *Campb. N. P.
Rep.* 170. 2 *Taunt. Rep.* 5. 14 *Johns. Rep.* 201. 15 *Johns.
Rep.* 303.) The defendant cannot be permitted to contra-
dict his own solemn act and oath. But, it will be said, that
the bill of sale, though absolute on the face of it, was in
fact a mortgage ; but after the full evidence of absolute
ownership, can the defendant prove by parol, that the
transfer was by way of a mortgage? As between the par-
ties, they must be concluded by the written documents, and
are not at liberty to gainsay the fact as to the defendant
being the owner. (*Phillips' Evidence,* 423. 3 *Wils.* 275.
8 *Mass. Rep.* 517.) In the case of *Robinson & others* v.
*M'Donell,* (2 *Ald. & Barn. Rep.* 136.) which was perfectly
analagous, it was held that, as between the parties, the ab-
solute bill of sale was binding, and that the parol agreement
could not be set up in contradiction to it. 2. But, admitting
the evidence, it shows, that the defendant was a mortgagee
in possession, exercising every possible act of ownership in
relation to the ship ; and, as such mortgagee in possession,
he is liable for the wages of the master and mariners.

3. The defendant took the ship subject to all existing in-
cumbrances on her, and to all contracts made by the own-
ers and master, previous to the transfer. (*Portland Bank*
v. *Stubbs,* 6 *Mass. Rep.* 422.)

*D. B. Ogden,* contra. If the plaintiff had sued *M* and
*C.,* he must have brought his action on the express agree-

ment, or have been nonsuited. He never could recover on the *quantum meruit*. Admitting that the defendant, afterwards, became the owner, may he not say to the plaintiff, " you must look to *M. & C.*, with whom you made your special contract." Can the plaintiff, then, recover against the defendant on an implied *assumpsit?* The law will not imply a promise to pay, against the clear and manifest equity of the case. The plaintiff, before he entered into his engagement, as master, had full knowledge of the transaction between *M. & C.* and the defendant, and that the latter had no interest whatever in the vessel or voyage. It would, therefore, be unjust to permit him to recover against the defendant. After the voyage, the plaintiff made out his bill against *M. & C.*, and received a part from them; and did not call on the defendant, until he had parted with the property, and *M. & C.* had become insolvent.

It is true, that as between the parties themselves, to a written instrument, parol evidence is not admissible to vary it; but this rule does not apply to third persons, where the object is to show the true nature of the transaction.

If the defendant was a mortgagee, he was the legal owner; and his oath, at the custom house, was not inconsistent with the fact. Besides, the oath is merely that he, an *American* citizen, and not a subject of any foreign state, has the property in the ship; not but that some other *American* citizen may also have an interest.

*T. A. Emmet*, in reply, said, that as to the equity of the case, the defendant had the vessel as collateral security, and had been benefitted by the services of the defendant as master. Suppose the plaintiff had been guilty of misconduct as master, so as to render himself liable to the owner, who would have had the right to maintain an action against him? The defendant. He ought, then, to compensate him for the services which he has faithfully performed. The privity of contract between the plaintiff and defendant, is sufficient in law to raise the implied *assumpsit*. The defendant having made oath that he was the owner, he ought to be held to all the consequences of ownership.

PLATT, J. delivered the opinion of the Court. I see nothing to support the first objection, (as between these parties,) viz. that *parol* evidence should not be allowed, to prove that the bill of sale, absolute in terms, was, in fact, to operate as a mortgage merely. But whether the defendant be considered as an *absolute purchaser*, or as a *mortgagee in possession*, would, in my judgment, be immaterial, provided there was an actual contract of hiring between him and the plaintiff; and in either case, the relation of *owner* and *master* would exist, so as to support the claim of wages, if the voyage was performed for the use of the defendant.

What character the transaction might bear, as between the defendant, and the creditors of *Minturn & Champlin*, whom it was intended to deceive, is not now a question. The *plaintiff* was privy to the whole arrangement. He lent himself, throughout, as a willing instrument to effectuate the secret agreement between *Minturn & Champlin*, and the defendant. He was, in fact, a *party* to that agreement, and stipulated, in writing, with *Minturn & Champlin*, for his reward, viz. 100 dollars per month, and seven tons privilege. That contract shows, that he undertook the voyage with a clear understanding, that he was to look to them for his wages. It is proved, also, by the supercargo, that the plaintiff used his privilege of seven tons, in conformity to that agreement. It seems to me, therefore, to be utterly inadmissible, that he should now, since the insolvency of his real employers, be permitted to turn round and say, " the defendant was ostensible owner, and, therefore, he must pay me wages, although it was known to me, that he had no interest in the voyage, and it was expressly agreed, that I should look to *Minturn & Champlin* for my compensation."

The plaintiff is bound by his *express* contract, and cannot waive it by electing to sue the owner, when it appears, that he knew that *Minturn & Champlin* were the real shippers, and that the defendant merely lent his *ship*, and his *name*, to cover a voyage for their exclusive benefit, and without any claim for *freight* on his part.

On the merits, therefore, I think the plaintiff is not entitled to recover. But the objection to the form of action, seems to me, also, to be well founded. Here being an ex-

ALBANY,
August, 1820.

JACKSON
v.
SCHUTZ.

press contract for a stipulated *amount* and *mode* of compensation for the services rendered, viz. " 100 dollars per month, and seven tons privilege," the defendant cannot waive it, and insist on a *quantum meruit.*

The defendant is, therefore, entitled to judgment.

Judgment for the defendant.