KENNEDY MANUF'G CO. (CLARK v.). See Case No. 2,826.

---

## Case No. 7,709.

### KENNEWAY et al. v. The WICKFORD.

[1 Betts, D. C. MS. 71.]

District Court, S. D. New York. 1840.[1]

#### VESSEL—BILL OF SALE INTENDED AS A MORTGAGE—LIABILITY OF GRANTEE—WAGES.

[A grantee in an absolute bill of sale of a vessel intended as a mortgage is bound by his admission of liability and express promise to pay wages earned during the time he held such title, made after he had taken possession, and while she was under arrest for such wages.]

[This was a libel by Thomas Kenneway and others against Davis and Brooks, claimants. of the brig Wickford, for wages.]

[1] [Affirmed by circuit court (case unreported).]

BETTS, District Judge. This suit was commenced in rem against the vessel for wages, with a claim for short allowance, during the last voyage. On the arrest of the vessel a proctor appeared for the owners generally, without naming them. On the 12th of December a supplemental libel was filed, charging the respondents to be owners, and process in personam was obtained thereon upon which they were arrested. On the same day the proctor who had appeared for the owners generally called at the office of the proctors of the libellants, with Mr. Davis, one of the respondents, who was introduced as one of the owners, and represented himself and partner as owners of the brig, and wished to settle the demands of the libellants. The respondent admitted his firm to be answerable for the wages, and declared their willingness to pay them, but complained greatly of the demand for short allowance, and appealed to the libellants, all of whom were present, to remit that demand. A long parley ensued, and resulted in Mr. Davis agreeing to pay the wages with the addition of $125 for short allowance, together with costs, not to exceed, when taxed, $60. Mr. Davis left the office to ascertain from the shipping articles the precise amount of wages, and to procure the money or a check, but did not return or discharge the amount as agreed. On the 18th of December the proctor who had appeared for the owners gave notice to the proctors of the libellants that his appearance was withdrawn, and that the respondents would decline paying the wages, leaving the libellants to their remedy against the vessel. The proceedings against the vessel were thereupon carried forward to a decree, upon which she was sold, and the proceeds, $525, paid into court. This being insufficient to satisfy the decree, the supplemental libel is proceeded upon, and a decree is prayed against the respondents personally to make good the deficiency.

The pleadings and proofs being completed on this branch of the case, the respondents object at the hearing that the action cannot be maintained against them personally, because they were not owners of the vessel, but only mortgagees out of possession; and, if a promise to pay is established by the testimony, that it is nudum pactum, upon which they cannot be made responsible. No defence is taken for either defendant as distinct from the other.

The proof is very clear that the respondents were in full, legal, and actual possession of the vessel at the time the promise was made, and had received freight money for the voyage upon which some part of the wages accrued; and it will therefore be out of the case to discuss the question of their liability as mortgagees not having possession. It may, however, be remarked that the doctrine laid down in the books referred to on the argument has application to a responsibility as incident to the relationship of mortgagee, and does not touch the point rising out of the facts here,—whether his interest is not such as to support an express promise to pay liens with which the vessel is chargeable. But abstract propositions will be avoided, and the single enquiry be considered whether a mortgagee, after he has taken possession of the vessel, and she is under arrest for wages, is bound by his express promise to pay outstanding wages earned during the period he had title to her. The fact of the promise is established by a strong preponderance of proofs, and that it was made with great precision, and after full discussion and consideration of all the terms, and was not a mere offer for a settlement and to buy peace. The case of Champlin v. Butler, 18 Johns. 169, would be conclusive on this point if the promise had been made by mortgagees previous to the services being rendered; and the counsel resisted the demand in that case upon the distinction that an implied promise would not be raised against the party not in possession and who did not receive the freight. And it is further to be remarked that there the master sued, who could only recover upon his contract, not having any privilege against the vessel. The undertaking by the respondents here was after the services were rendered, but it is clearly susceptible of an interpretation beyond a promise to pay upon a consideration already executed, inasmuch as it rested upon the acknowledgment of a liability against the respondents when the indebtedness accrued. 14 Johns. 378.

It is important that the naked question shall be decided, that it may be clearly understood what remedies seamen have against parties holding the legal title to a vessel by full bill of sale, but under some collateral arrangement, not appearing upon the papers, which may convert the apparently absolute title to a mere security or mortgage. It is very clearly settled upon authority that the party holding such title is clothed with all the rights of absolute owners as against all the world, and that such rights will be enforced in admiralty without regard to the equities between him and his grantor or other parties. 3 C. Rob. Adm. 225; 5 C. Rob. Adm. 138; Wheeler v. Sumner [Case No. 17,501]. So, also, is the rule at law in respect to vessels disposed of out of their home port. 4 Mass. 661; 8 Mass. 287; 7 Pick. 397. When, then, the law imparts to such conveyance every attribute of a complete and perfect title in displacing the equities of the creditors of the assignor and refusing to limit the effect of the conveyance to the liabilities it was intended between the parties to cover, it would seem no more than reasonable that the converse should accompany a privilege so liberal and protective to the assignee, and that he should be chargeable with the legal responsibilities attaching to an entire ownership. 15 Mass. 477. The ownership of the ship may be all that creates or induces

credit to a party, and it is but solemn mockery to turn over the demands of seamen to be discharged by him personally, when such ownership, which alone could supply him the means of satisfying them, is entirely divested. If the question may be regarded as an open one, it is deserving the gravest consideration whether the assignee of a ship in full title shall be permitted to secure to himself all the advantages of absolute owner, and yet stand exonerated from its responsibilities by exhibiting a confidential arrangement between him and his assignor, which may qualify and reduce his interest as between themselves to that of a mortgagee.

A careful analysis of the cases might perhaps lead to the conclusion that the rule exempting mortgagees from the liabilities of owners came into force in reference to the qualified title of mortgagee appearing upon the conveyances. But if it is to be indiscriminately applied to conveyances absolute or conditional upon their face, the inquiry upon which this great question was started recurs, whether the mortgagee who is in possession of the vessel, and then admits his liability for antecedent wages, and promises to pay them, can be exonerated from such engagement because the law would not have imposed it upon him originally, or for the want of a legal consideration to uphold it. And in passing upon these questions, the effect of the conveyance, whilst the vessel was abroad, of carrying every attribute of actual possession within it, plainly indicated by the cases above cited, is laid out of view, and the naked propositions presented by such statement of the case will be considered. First, then, as to the effect of a distinct and full admission by the respondents of their liability to pay these wages. No one can dispute that if the bill of sale operated according to its terms, the liability of the assignee would be complete at law for all wages earned subsequent to the transfer. For the charge attaches upon the owner because of his relationship to the vessel, and not upon the footing of any direct undertaking on his part, or trust on account of his responsibility, or even knowledge at the time of his being proprietor. Abb. Shipp. 19, and notes. All that intervenes to prevent such responsibility, commencing with the bill of sale, is the secret undertaking between the parties that the apparently absolute title shall be subject to redemption and defeat on the repayment of the consideration money, and this is only proved by parol. The declaration of one party (the assignor) can be no higher evidence of that understanding than that of the assignee, and is so made that a remedy should be sought could the assignor enforce his interpretation of the agreement against the assent of the assignee unless he could command the aid of testimony other than that of the principals to the arrangement. None other is offered here. Accordingly the admission of the respondents as to their relationship to a responsibility on account of liens

upon the vessel would be at least of equal force with the testimony of the assignor contradicting it, and the matter might then be regarded as left, under the conflicting assertions of the parties, to rest upon the documentary evidence. But with the strong anxieties manifested and declared by the witness Whitaker to exonerate the respondents from this charge, their voluntary and unreserved admission of their liability ought probably to be regarded as of the greater weight, and operate to fix their responsibility as upon an original liability proved. The responsibility would be equally complete on their part though but mortgagees, as if owners, provided either the contract of hiring by the libellants had been made with them, or they had, as against Whitaker and the rest of the world, the beneficial possession of the vessel, with the right to her freight and earnings. Abb. Shipp. 19. All the concomitant facts in proof look strongly to such aspects of the transaction. The policies upon the vessel were all secured to the respondent, and immediately upon her coming in they were put in possession of the outstanding freight, and. there being no other funds, they advanced money to the captain to pay off the crew. These facts and circumstances may exist perhaps without subjecting the party to any further liabilities than would attach to mortgagees out of possession, and not chargeable upon any express contract, but they are also consistent, and more naturally so, with the relation of actual owners or mortgagees having the entire possession and control of the vessel, or even with the presumption that the hiring was in its inception under their authority and responsibility. Certainly they must best know what their real relation was to the subject-matter, and their explicit and well-considered declarations here in port, after the vessel was formally surrendered to them, assenting to their liability for the demands of the libellants, may be regarded as a surer and more satisfactory explanation of the character of their relationship to the vessel than the evidence of Whitaker, brought in to change and overturn the whole of such admissions.

A case can hardly be put where a promise per se can carry with it a higher claim to be executed. The respondents, upon the statement of the defense and on the proofs had an interest of some thousands of dollars, secured only by this vessel. The antecedent bill of sale was fully executed on her arrival in port, and she went into their possession. She was libelled, and the respondents were arrested for the wages of the crew earned in navigating her since the formal title to her, at least, was transferred to the respondents. At the time no one supposed she would not bring at public sale much more than the amount of this demand; and with all these particulars before them, the direct and positive promise to pay these wages is proved to have been made by the respondents. It is

true they now urge that they only proposed terms of compromise, and never assumed the debt, and such undoubtedly is the understanding of Mr. Davis of his offer. The respondents have that high standing for probity as merchants and citizens as to leave no shade of suspicion upon the rectitude of their intentions in the matter to justify the slightest surmise that they would deviate from what they supposed to be an engagement, but these considerations can supply the court no counterpoise to the testimony, and accordingly the case must be judged upon the evidence, upon rules equal and common to the most humble and the most honorable. It is not intended to trench upon the rule of law declaring a promise, with whatever solemnity and deliberation made, to be nudum pactum, if the consideration leading to it is executed and past. The inherent equity and justice of the case would afford no excuse for disregarding a fixed principle of law. But every case does not fall within the rule where the promise is subsequent in point of time to the act or circumstance eliciting it. For if the considerations, though past, be of highly beneficial character to the party making it, the law does not demand proof of a request or other particular creating a liability, but will presume it. 14 Johns. 378. The interest of the respondents in the vessel, and the safe performance of her voyage, was of a character to render the services of the libellants in navigating her of the most beneficial nature to them.

Decree for complainant.

On appeal this decree was affirmed, April 27, 1841..