## FONTAINE & DENT *vs.* BEERS & SMITH.

1. The declarations of one who is in possession of property either real or personal, explanatory of his possession, are admissible evidence as part of the *res gestæ.*

2. When evidence, a part of which is legal, is objected to as a whole, the court is not bound to separate the legal from the illegal part of it, but the motion to exclude may be refused.

3. On the trial of the right of property in a vessel, on which an attachment had been levied, and a claim interposed under the statute, the plaintiffs may prove directions given to the captain of the vessel by the defendant in attachment, before the levy, under which the former acted.

4. But directions given to the captain by the defendant subsequent to the levy and interposition of the claim are irrelevant and inadmissible.

5. Whether such subsequent directions would be irrelevant, when offered in connection with proof that the claimants held a lien merely for their indemnity, which lien had been discharged by the defendant after the claim had been interposed. QUERE?

6. The declarations or admissions of the defendant, made while in possession of the brig before the levy, in disparagement of his title or interest, are admissible evidence.

7. When the parties proceed to trial upon an issue whether "the brig levied on was, at the date of the levy, subject to the attachment," a

Fontaine & Dent v. Beers & Smith.

bill of sale bearing date after the levy is *prima facie* irrelevant, as being outside of the issue.

8. But such an issue is itself immaterial.

9. The interest of the mortgagor, while in possession of the property before the law day has arrived, is subject to levy; but when the mortgagee becomes entitled to the possession, upon default being made, he may claim the property, and terminate the sheriff's possession.

10. But if the mortgagor discharges the lien by paying the mortgage debt before the trial of the claim suit, the assertion of his intervening claim by the mortgagee cannot prevent a condemnation of the property.

11. The statutes of this State requiring the registration of mortgages, deeds of trust, &c. on personal property do not apply to vessels for the navigation of the ocean. The evidence of title in them is to be looked for in their ship papers and registration according to the acts of Congress.

12. A written instrument is required to pass the title to a ship, as determining its national character; but as between vendor and purchaser, a parol sale, consummated by delivery, will be good to pass the title.

ERROR to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

BEERS & SMITH sued out an ancillary attachment against George H. Johnson, which was levied, on the 12th June, 1849, on the Brig Republic, then lying at the wharf in Mobile. A claim was interposed by Fontaine & Dent, and bond given to try the right of property. The parties proceeded to trial upon the issue whether the Brig, at the date of the levy, was subject to the attachment. A bill of exceptions, which was sealed on the trial, discloses the following state of facts.

Previous to February, 1849, the Brig belonged to Heirn & Le Baron, (the title being in Heirn alone,) who sold it in February to Johnson and one Smith, Johnson purchasing five-sixths, and Smith one-sixth. The purchasers gave their promissory notes payable at a future day, and the vendors executed to them a bond, conditioned to make title to the Brig on the payment of the notes. Smith, who was examined as a witness for the plaintiffs, testified that, after their purchase, he made one voyage with the Brig from Mobile to New York; that he acted as captain during the voyage, but always was governed by the direc-

tions of Johnson, as to the business &c. in which the Brig should be employed; that in May, 1849, he sold out his interest to Johnson, but still continued to manage the vessel as captain, under Johnson's directions, until some time in July, 1849; and that during all this time he only knew Johnson as her owner, and was employed by him. "The plaintiffs then, with a view of proving continuing control and ownership by Johnson, from the time of their purchase to the time of her leaving Mobile, and after the levy and claim interposed, asked the witness what Johnson did, if anything, about taking the vessel to sea. To this the claimants objected; but their objection was overruled, to which they excepted. Witness replied, that the Brig went to sea in July, 1849, under the direction of Johnson, and that Johnson paid the pilotage and expenses." Letters written by Johnson to the master of the vessel, while on the voyage from Mobile to New York, giving directions as to the business in which she should be engaged, were offered in evidence by the plaintiffs, and admitted by the court against the claimants' objection. The declarations of the mate, who was in command of the vessel at the time of the levy, were also objected to by the claimants, but their objection was overruled, and the declarations went before the jury. Johnson's notes for the purchase money of the Brig were endorsed by Fontaine & Dent, and were paid in Bank by them at maturity; and afterwards, in the summer of 1850, Johnson refunded to them the money so paid. The bond for title was assigned by Johnson to Fontaine & Dent, on the 17th February, 1849, to secure them against their liability as endorsers of his notes; and a bill of sale was made to them by Heirn, on the 14th June, 1849, when they had paid Johnson's notes. This bill of sale was offered in evidence by the claimants, and was excluded by the court, to which they excepted. The claimants offered to prove by a witness admissions made by Johnson, while in possession of the Brig, after his purchase and before the levy of the attachment, as to the title, but the evidence was excluded by the court, and the claimants excepted. There was a verdict and judgment for the plaintiffs in attachment. The errors assigned will be understood from the opinion.

Wm. G. Jones, for plaintiff in error:

1. The declarations of Beverly were mere hearsay, and should

have been excluded. Beverly was not a party to the suit, did not pretend to have any interest in the Brig, and was not the agent of Fontaine & Dent. These declarations were admitted by the court, as being declarations of a party in possession, explanatory of his possession, and part of the *res gestæ*. It is submitted, that the admission of declarations as part of the *res gestæ* has already been carried so far as seriously to impair the salutary principle excluding hearsay evidence, and to lead to great uncertainty and confusion in the law. But none of the cases go so far as to admit these declarations. Beverly was a competent witness; his possession was temporary; his declarations went not only to the possession, but to the title of the property.—8 Ala. 650; 10 ib. 358; 17 ib. 314; Ib. 362. Where the declarant is not the party, nor the agent of the party, against whom the declarations are offered, but is himself a competent witness, and might be examined in the case, his declarations are inadmissible.—8 Pick. 127; 2 English's R. 276; 10 Conn. 12; 15 Johns. 496; 4 B. & C. 325, (10 En. Com. L. R. 345;) 3 C. & P. 179, (14 En. Com. L. R. 261.) This principle was expressly recognized in 1 Stew. & Por. 453, and the court is now urged to re-assert it.

2. The admission of the letters from Johnson to Smith was also erroneous according to the principle above stated, and for the further reason that they were irrelevant to the issue. They were not contemporaneous with the contract of purchase by Johnson, nor with the levy of the attachment. They were not explanatory of, and did not accompany any act done. The declarations made by Johnson to a third person, without the knowledge of Fontaine & Dent, ought not to be received to defeat their rights.

3. The acts of Johnson after the interposition of Fontaine & Dent's claim are not admissible to defeat their claim or title, unless it is shown that they were done with their knowledge or consent.

4. The bill of sale from Heirn to Fontaine & Dent, made in pursuance of the contract of February 17, 1849, and its transfer to F. & D. ought to have been admitted in evidence. Though made after the levy, it was made before the claim of F. & D. was interposed.—4 Ala. 475; 6 ib. 35.

5. If the declarations of Johnson and his agent, in his own fa-

Fontaine & Dent v. Beers & Smith.

vor, were admissible evidence against the claimants, certainly his admissions in disparagement of his own title, made whilst in possession, ought to be received in favor of the claimants.—10 Ala. 429; 17 ib. 10; Ib. 608; 26 Maine, 107.

6. The title to ships does not pass by parol, or delivery. It can only pass by bill of sale in writing, and this is said by the highest authorities to be indispensable.—3 Kent's Com. 130; 1 Mason's R. 138; Ib. 317; 2 ib. 435; 4 ib. 391. Our laws in relation to the registration of mortgages do not apply.

7. The issue was improper and immaterial. The court should not have rendered judgment on the verdict, but should have awarded a repleader.—4 Ala. 475; 5 ib. 770; 6 ib. 35.

P. Hamilton, contra:

1. The question to and answer by Beverly was competent testimony, under the rule that what is said in explanation of his possession by the holder of personal property is admissible evidence.—17 Ala. 10-118-220-316-366; 8 ib. 650; 10 Ser. & R. 426-7; 4 Ala. 42; 10 ib. 359-430; 3 Car. & Payne, 395, (14 En. C. L. 366;) 4 Pick. 378; 2 Phil. Ev. (C. & H. Notes,) 601-2-3-592; 2 ib., 177-8.

2. For the same reason, the letters of Johnson, under date of 17th and 22d March, 1849, to the master of the Brig, were admissible; they were facts of ownership, exercised by Johnson, before the levy, or claim; directions given to the agent in possession, and obeyed by that agent. Acts of ownership may be proved.—10 Ser. & R. 426-7. Letters by the agent would have been admissible.—3 Dallas' R. 39.

3. Proof of acts of ownership by Johnson, after the date of the levy and claim, is more than the plaintiff in execution could be required to make. Surely making a stronger case than was required of him, is no error.—5 Pick. 410.

4. Evidence of Johnson's admissions and statements as to the title to the Brig was properly excluded. Statements as to title do not fall within the rule as to explanation of the possession.—17 Ala. 316-813; 10 ib. 358-430; 8 ib. 650, and authorities supra.

5. The bill of sale from Heirn & Le Baron bears date after the levy. It did not support the issue. The form of issue was not objected to. The levy of plaintiffs' attachment gave them a

Fontaine & Dent v. Beers & Smith.

lien on the Brig, and that could not be divested by any title originating after that date.

6. The charges of the court assert that Johnson's contract, in February, 1849, with Heirn & Le Baron, and his possession. under it, gave him a right that could be levied on, and that at most his transfer to claimants, not being accompanied by the possession, nor being recorded, gave no right as against an attaching creditor. No bill of sale was necessary, in this case, to give Johnson a title to the Brig.—12 Mass. 57; 16 ib. 340; 16 Pick. 406; 8 ib. 86; 15 Johns. 302; 18 Johns. 169; Anthon's R. 121. Johnson did not put Fontaine & Dent in possession; his own possession remained undisturbed during the whole time the vessel remained in this country. If he did any thing at all, which could affect the right of the creditor, he mortgaged the vessel to Fontaine & Dent. But the same was never recorded, and no proof of notice to Beers & Smith was made. Under the authorities last cited, and those quoted by Mr. Jones, as against Beers & Smith, no title passed to Fontaine & Dent.

The testimony in the case shows, that whatever advance of money the claimants, Fontaine & Dent, may have made for Johnson, they had been entirely repaid before the trial, by Johnson; their lien or claim on or to the Brig was therefore extinguished and satisfied. This testimony was received without objection. No injury, therefore, has been sustained by Fontaine & Dent. Were the record full of error, they have not been harmed. In such case, this court should not reverse.

In trial of right of property, claimant must rest on his own title, and cannot interpose the title of a third party.—15 Ala. 292; 16 ib. 192. Therefore, no matter what the title of Heirn & Le Baron to the Brig, Fontaine & Dent cannot rely on it. The possession was with Johnson, and that by contract with Heirn & Le Baron; as to all other parties, the title was in Johnson.

CHILTON, J.—1. The first exception, on the part of the claimants, was to the admission in evidence of the declarations of Beverly, made to the officer who levied the attachment upon the Brig, at the time of the levy. Said Beverly, upon being asked by the officer if the captain was on board, replied, "*that the captain was not on board, but that he (Beverly) was mate of the*

*Brig; that the Brig belonged to George H. Johnson; that he held possession of the Brig for said Johnson, and was employed by him.*" The bill of exceptions states that "the claimants moved the court to exclude this evidence from the jury; but the motion was overruled."

The authorities, generally, agree that the declarations of one in possession of either real or personal property, explanatory of the possession, may be received as evidence, since they constitute part of the *res gestæ;* but declarations explanatory of *past* transactions, or as to the mode in which title was acquired or is held by a third person, not explanatory of the possession, are disallowed. According to this rule, a portion of the proof which the court was asked to exclude was indisputably legal, and if it were conceded that other portions were not, still as the objection applied to the whole, the court properly overruled the motion to exclude it.- It is settled, that it is not the duty of the court, in such case, to distinguish and separate that portion which is legal from that which is not; but it may refuse such general motion to exclude the whole.—Borland v. Walker et al., 7 Ala. 269; Donnell v. Jones, 13 ib. 490. It is unnecessary, therefore, for us to criticise this evidence and to decide what portion, if any of it, was illegal.

2. There was no error in allowing the defendant in error to prove the directions given by Johnson to the captain of the vessel, under which the latter acted. These directions, coupled with the acts in compliance with them, were parts of the thing done, and explanatory of it, and tended to show the control and management of the vessel by Johnson before the levy, and to raise the presumption of ownership.

3. But we are unable to perceive what legitimate influence the proof of directions given by him *after* the levy was made, and the vessel had been replevied by the interposition of the claim, could have *upon the matter in issue.* The claimants, after they had entered into bond for the trial of the right of property, and the Brig had been delivered to them, had the right to place her in the possession of any person they pleased. The vessel was in the custody of the law. The claimants and their sureties on the delivery bond were bound for her forthcoming, in the event of a judgment of condemnation, and nothing said by the defendant in execution, or done by him, except in the

presence of the claimants, and by their assent, express or implied, could properly be received to invalidate their claim. They had the right to continue the vessel in her accustomed employment, and under the same direction to which she had formerly been subjected, without being put to the alternative of explaining the circumstances of the subsequent possession, or having an inference drawn from it prejudicial to them. We are not prepared to say, however, that under a proper issue, this evidence, if offered in connection with proof that the claimants held a lien merely for their indemnity, which lien had been discharged by Johnson since the claim was put in, would have been irrelevant. Such acts of ownership would tend to show the discharge of the lien, and that the property had re-vested in Johnson.

4. As the plaintiff in the attachment seeks to condemn the interest of Johnson in the vessel, it is very clear that his (Johnson's) declarations or admissions, while he was in possession of the Brig, made after his purchase and before the levy, in disparagement of his title or interest, are proper testimony.—1 Greenl. Ev., § 190.

5. The reasons for the exclusion of the bill of sale from Heirn to Fontaine & Dent are not set forth; but we take it for granted the court was of opinion, that the same, having been executed subsequent to the levy of the attachment, could not be received to affect the levy. Had the issue been properly made, the exclusion of this instrument would have been clearly erroneous. But the question being narrowed down by mispleading, to the liability of the Brig to the attachment *at the time of the levy*, the bill of sale, dated after the levy was made, was *prima facie* irrelevant, as it was outside of the issue. But the issue was clearly immaterial. Conceding that Johnson was the mortgagor, and that at the time the levy was made the law day had not arrived, when the mortgagee was entitled to the possession, then the interest of the mortgagor in possession was subject to levy; but it by means follows that the property must be condemned; for when the mortgagor makes default, and the mortgagee becomes entitled to the possession after the levy, the latter may claim the property and terminate the sheriff's possession.—McGehee v. Carpenter, 4 Ala. 475, and cases cited.

6. If, however, the levy was properly made, and the mortgagee acquires a subsequent right to possession, by the mortga-

47

gor's default of payment, and asserts his claim under the statute, this intervening claim cannot prevent a condemnation of the property, if the mortgagor before the trial wipes out the default by the full discharge of the mortgage debt. The full satisfaction of the demand which constituted the lien destroyed the lien, and left the claim without foundation.

7. But it is insisted that Johnson's title must be regarded as absolute, since the bond which he held for title to the Brig, and which he transferred to his securities, who are the claimants, was never recorded; that if it was designed to operate as a mortgage, it should have been recorded as the statutes require deeds of trust and mortgages. In reply to this, we feel no hesitation in holding that the statutes above referred to were never designed to apply to the transfer of vessels for the navigation of the ocean. These transfers are subject to marine regulations of a different character; and the object of the statutes, which was to furnish evidence of title, and give notice to creditors and purchasers, could not be effected by registering the trust deed in any particular county, since the vessel continually changes her locality, as the interest or caprice of her owners may suggest. The evidence of title is to be looked for in the ship's papers, and her registration according to the laws of Congress. Possession and acts of ownership will, in this as in other cases of property, be presumptive evidence of ownership, (4 East. 130, cited 3 Kent's Com. 130,) but are not conclusive.

8. It is insisted, further, that the vessel could not pass from Heirn & Le Baron to Johnson without a bill of sale, so as to vest in him a title subject to be seized on attachment. The rule generally recognized seems to hold that a writing is required to pass the title to a ship. We are not disposed to gainsay this rule, as to the evidence of ownership required to determine the national character of the vessel; but as between the vendor and purchaser, a parol sale consummated by the delivery of the ship will be good.—3 Kent, 130; 16 Mass. 336; 7 Johns. 308; 16 Pick. 406; 12 Mass. 57; 18 Johns. 169. Assuming the facts stated in the record, respecting the purchase by Johnson of Heirn & Le Baron, to be true, let us suppose that Johnson had paid them in full for the vessel before it was levied on, which would of course have discharged their lien on the ship for the purchase money, could they have sued Johnson, notwithstanding,

and have recovered the vessel from him? He has purchased and paid for it, and the same has been delivered to him under the contract. Now although he has no bill of sale, we think the want of this written evidence, as between the parties, would be disregarded by the court, and it would be considered that Johnson was the owner, although he wanted the usual, but not the indispensable evidence of ownership, so far as the defence of such action would be concerned. The fact that the bond was given, showing the vendor's lien, which lien had been discharged, would make no difference. The same result would follow, if the sureties of Johnson paid the purchase money, which the latter has since fully repaid to them. The fact that the bill of sale was given to the claimants, while a lien in their favor existed, does not work a divestiture of Johnson's title, if he has discharged the debt which the bill of sale was given to secure. There was proof of such payment by him, but the case in the court below was not made to turn on that question. We are not allowed, in the present condition of the record, to treat such payment as a fact found by the jury, and consequently cannot take it for granted, so as to prevent a reversal, upon the ground that the errors worked no injury; *non constat*, the jury may find otherwise.

This statement of our views, without further comment, will enable the court below properly to dispose of the case, after allowing the issue to be reformed, so as to correspond with the directions in The Planters' & Merchants' Bank v. Willis & Co., 5 Ala. 770.

Let the judgment be reversed and the cause remanded.