This is an appeal from a judgment of conviction and sentence to imprisonment for fifteen years on a jury trial, in which the jury found defendant guilty of theft in the first degree as charged in an indictment in which defendant was alleged to have "knowingly obtained or exerted unauthorized control over the 1982 Freightliner truck, Serial Number: IDUPYDYB3CH208084, the property of Owel Newman, of the value of an amount in excess of $1,000.00, with the intent to deprive the owner of said property, in violation of § 13A-8-3 of the Code of Alabama. . . . ." Code of Alabama 1975, § 13A-8-3 provides:
 "(a) The theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another, constitutes theft of property in the first degree.
 "(b) The theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree.
 "(c) Theft of property in the first degree is a Class B felony."
Under the heading in his brief of "ISSUES PRESENTED FOR REVIEW" appellant enumerates and sets forth ten separate issues. Appellee's brief contains a restatement of what it deems to be the issues presented and by doing so enumerates eight issues. Perhaps the difference between the parties as to the number of issues presented on appeal is due, partly at least, to the fact that some of the issues presented andseparately treated in appellant's brief, are jointly treated in appellee's brief. Furthermore, appellant contends that there was a material variance between the indictment and the proof as to the number and ownership of the "Freightliner truck," but he makes no contention that the evidence in the case was not sufficient to present a jury issue as to the defendant's guilt of theft in the first degree of a "Freightliner truck."
Although appellant's brief contains a two-page statement under the caption "STATEMENT OF THE FACTS," the brief does not contain a recital of the evidence bearing on the question of defendant's guilt or innocence of theft in the first degree of a Freightliner truck in the manner charged in the indictment. Therefore, we think it unnecessary for us to summarize such evidence as to that question. We limit our references to the evidence to the portions thereof that pertain to the specific issues raised on appeal, which we now proceed to define and determine.
 I.
The undisputed evidence shows that on May 22, 1982, a Freightliner truck was missing from the place of business maintained by its owner in Fayette County and that on May 25, 1982, parts of it were discovered in Walker County while they were on the premises owned by defendant. Law enforcement authorities of both Fayette and Walker County participated in the search of the premises that resulted in the discovery and seizure of some of said truck parts. No warrant was issued for the search.
Defendant operated a "shop" on the premises owned by him. The premises owned by him were adjacent to the home and premises of his father. Law enforcement authorities had obtained information to the effect that some of the parts of the missing Freightliner truck were on or about the premises searched. At the time of the search, the defendant and his brother were working on a truck. At that time, there were other trucks and truck parts on or about the same premises. Before any search was conducted, one of the officers had seen defendant's father, whom the officer had known for many years, while defendant's father was driving down the road near his home. This officer testified:
 "Mr. Phillips stopped and I advised him of the nature of our business there and asked him for consent to search his property *Page 60 
for any stolen trucks to which Mr. Phillips consented.
 "Q. All right. Tell us exactly what was said, if you would.
". . .
 "A. I just told him that the Fayette County officers had received information that there was some stolen trucks.
". . .
 "A. I advised Mr. Phillips that we wanted to search his property.
"Q. For stolen property?
"A. Yes, sir.
"Q. All right. What did he say to you?
". . .
"A. He said yes I could search his property.
"Q. All right. Did you then go on to his property?
"A. I did, yes, sir.
". . .
 "I got out of my car, walked up toward the shop where I could see Larry Phillips or Richard and he was by the front of the truck and was working on the bumper of the truck or something and I advised Richard as to what my presence there was that I was there to search the property for some stolen property and was doing so at the consent of his father, Mr. Phillips.
"Q. Did he say anything to you?
"A. He said okay.
"Q. He said okay?
"A. Yes, sir."
Counsel for both parties on appeal cite authorities in support of their respective positions as to whether the warrantless search was in violation of defendant's constitutional right to security "against unreasonable searches and seizures." In none of the cases cited were the facts so nearly the same as the facts in the instant case that we can say that it is dispositive of the issue now presented. Even though neither the consent of defendant's father nor the "okay" uttered by defendant rendered the search valid, we think that,when considered together under all of the circumstancesexisting in the instant case, they are sufficient to establish the validity of the search.
 ". . . The colloquial expression `O.K.' or `Okay' means `correct, "all right", to approve.' Websters New International Dictionary. The expression `O.K.' or `Okay' is of such common usage that it immediately conveys to the mind of the person to whom it is addressed that a proposition submitted is agreed to. The evidence regardless of its probative effect, was sufficient to convey to the jury the question of whether or not a contract was entered into." Muegler v. Crosthwait, Mo.App. 179 S.W.2d 761, 763 (1944).
Appellant endeavors to fortify his position by citations of and quotations from authoritative cases to the effect that in relying upon consent to an otherwise invalid search and seizure, the State has the burden of proving clearly, unequivocally and convincingly that consent was voluntarily given and that the claimed consent was not merely acquiescence. The latest Alabama case cited by appellant is Lietz v. State,291 Ala. 133, 135, 279 So.2d 116, 117 (1973), in which it is stated:
 "Consent to an otherwise illegal search must be clearly, unequivocally and convincingly proven. The courts will not lightly presume waiver of fundamental rights. Duncan v. State, 278 Ala. 145, 176 So.2d 840
(1965); Knox v. State, 42 Ala. App. 578, 172 So.2d 787
(1964).
 "The record in the instant case not only fails to expressly establish consent but clearly shows that the search was against the will of the defendant."
We recognize the quoted principle as controlling. In our endeavor to follow it, we note that the facts in that case are materially different from the facts presented in this case, particularly so in the outstanding fact in the cited case that there was not even acquiescence in the search but an unequivocal declaration by defendant that the officer could not go into defendant's house, and that in the case under consideration there was no protest by word or *Page 61 
action of defendant or anyone else against the search.
The most nearly similar case, in one respect only, to the present case, but dissimilar in one material respect, cited by appellant, is United States v. Marra, 40 F.2d 271 (D.C. 1930), in which it is stated:
 "Under the facts in this case, I find that there was no invitation given by the defendant Sam Marra to the prohibition officers to search his premises. The statement of the officers to the defendant, on presenting themselves at the door, that they were prohibition officers and were going to inspect the premises, and the reply of the defendant, `All right,' might be said to be acquiescence, but under the circumstances did not amount to an invitation to enter and search. In re, Lobosco (D.C.) 11 F.2d 892; United States v. Kozan (D.C.) 37 F.2d 415 at page 418."
According to the court reporter's transcript of the evidence herein, the defendant's father was the owner of a large amount of contiguous acreage on which a brick home was maintained by him and his wife, who, about eight years before the prosecution herein commenced, deeded approximately nine acres to defendant and defendant's wife, which consisted of almost a perfect square of land on which a shop of defendant was erected. The boundary line between the defendant and his wife and the property of defendant's father was not readily discernible. Apparently, there was no effort upon the part of any of the immediate family of either to keep any of the others from crossing the boundary line. There were trucks and parts of trucks mostly on the land of defendant, it seems, but not so placed thereon as to distinguish the ownership or proprietorship of his land from the land of defendant's father. The defendant did not live on any of this land. There was some evidence to the effect that he and his wife planned to move thereon, but they had not done so. Of some interest perhaps, but not of great significance, is the fact that after the prosecution against this appellant and others referred to in the transcript as co-defendants, but not included in the indictment in this case (one, at least, of which co-defendants was a brother of this appellant) this appellant and his wife executed a deed by which they deeded the mentioned nine acres of land back to this appellant's father. The father testified that this was not a gift to the father but that the father paid legal and valuable consideration therefor. The conduct of the officers involved was not of a highhanded or oppressive nature. There is nothing to indicate that, if defendant had let the officers know that he refused to allow them to search the premises, they would have remained on the premises any longer. A mere acquiescence, as distinguished from a voluntary consent on the part of this appellant, is not warranted by the evidence. The evidence as a whole shows defendant's voluntary consent clearly, unequivocally, and convincingly.[1] There was no violation of defendant's constitutional right to security against an unreasonable search and seizure, and the trial court was correct in overruling defendant's motion to suppress the evidence as to what the officers found on the premises.
 II.
Another contention of appellant is that there was a material variance between the description of the 1982 Freightliner truck and the evidence as to the description of the 1982 Freightliner truck that was allegedly stolen, in that the serial number stated in the indictment was: "IDUPYDYB3CH208084" while the evidence shows that the serial number of said truck was "IFUPYDYB3CH208084." Either by microscopic aid or 20/20 vision, the only difference to be found is in the second capital letter of the serial number description. In commenting on the claimed variance as a *Page 62 
ground for a motion for a judgment of acquittal, the trial court said:
 "It is obvious, as to the serial number in the indictment, that this is a typographical error and that all 14 out of 15 of the numbers are correct and it would appear that probably the last four numbers are the important numbers which designate a particular automobile or motor vehicle. The last four or five.
"So, your Motion should be denied as to that ground."
We agree with the ruling of the trial court that there was no material variance between the indictment and the evidence as to the description of the truck. A variance is not a material variance unless it misleads the accused or is substantially injurious to him in making his defense. Coker v. State, Ala.Cr.App., 396 So.2d 1094, 1096 (1981); Tyson v. State, Ala.Cr.App., 361 So.2d 1182 (1978). The transcript fails to disclose any basis for a reasonable contention that the claimed variance misled the defendant or was substantially injurious to him in making his defense.
 III.
The indictment alleged that the truck was "the property of Owel Newman." According to the testimony of Mr. Newman, the truck was owned by a corporation by the name of N and N Trucking, Inc. The corporation had only two stockholders, who were Mr. Newman and Mr. Newman's wife; Mr. Newman was president and Mrs. Newman was vice president and secretary-treasurer.
Some Alabama cases are cited in appellant's brief in which it was held that a material variance existed between the allegations in the indictment as to ownership of property in larceny cases and the evidence as to ownership, but in none of the cited cases were the material facts so similar to the facts in this case that the conclusion reached therein should be applied herein. In appellee's brief, reliance is placed uponMontgomery v. State, 169 Ala. 12, 53 So. 991 (1910); Hobbie v.State, Ala.Cr.App., 365 So.2d 685 (1978); and Baldwin v. State, Ala.Cr.App., 380 So.2d 388 (1980), but in each of said cases, the indictment charged a robbery, not larceny or theft, and the cases would be distinguishable from larceny cases and cases for theft, unless the indictment expressly charges theft of property "taken from the person of another," as now proscribed by Alabama Criminal Code, § 13A-8-3 (a). Substantially the same issue now under consideration has been previously decided adversely to appellant herein in Coker v. State, Ala.Cr.App.,396 So.2d 1094, 1096 (1981), wherein it is stated:
 "Appellant asserts that the indictment improperly placed ownership of one stolen television set in Melvin Reynolds when, in fact, Reynolds' testimony proved that it belonged to his mother, Evelyn Hamm. At trial Reynolds testified that he had bought the television set in question for his mother approximately one year prior to its theft. However, Reynolds' testimony proved that, although the television was owned by his mother, it was nevertheless within his possession and was located in his bedroom at the time it was stolen.
 "Section 13A-8-1 (1), Code of Ala. 1975 (Amended 1979), defines an owner as `[a] person, other than the defendant, who has possession of or any other interest in the property involved, even though that interest or possession is unlawful, and without whose consent the defendant has no authority to exert control over the property.' . . . In this regard the new criminal code definition of owner makes no change from our former rulings. See Mauldin v. State, Ala.Cr.App., 376 So.2d 788, cert. denied, Ala., 376 So.2d 793 (1979). Therefore, the trial court properly overruled the appellant's motion to exclude on that ground."
 IV.
On the back of what purports to be a photocopy of the indictment herein is the following printed information:
 "Filed in open Court on the day of __________, 19__ in the presence of the grand jury _____________________________________________________ Clerk *Page 63 
_____________________________________________________ _____________________________________________________ Presented to the presiding Judge in open Court by the Foreman of the Grand Jury, in the presence of _____ _____ other Grand Jurors, and filed by the order of this Court this _____ day of ___________, 19__ Clerk."
Immediately under the above is the following printed statement:
"Bail Fixed
 "At ___________________________ Dollars _____________________________________________________ Judge."
The blank for the amount of the bond has been filled in by ink handwriting with the amount of $25,000.00, and in the second blank line is the signature of the judge who presided at the trial of the case.
Appellant takes the position that the indictment fails to show a compliance with the following provision of Code 1975, §15-8-70:
 "All indictments must be presented to the court by the foreman of the grand jury in the presence of at least 11 other jurors, must be endorsed `filed' and must have the endorsement dated and signed by the clerk;. . . ."
We agree. However, we fail to find that this particular point was brought to the attention of the trial court. In holding, as we do, that this particular issue presented by appellant is not well taken, we follow what was said by Justice H.M. Somerville in Jackson v. State, 74 Ala. 26, 29 (1883):
 "Numerous objections of the foregoing character, going to the genuineness of the indictment as a court record, can not be interposed in this court for the first time. They should be raised in the court below, before pleading to the merits of the case, by timely motion to quash, or to strike the paper from the files. This course is not shown to have been pursued. Sparrenberger's case, 53 Ala. 481 [25 Am.Rep. 643]; Clarkson's case, 3 Ala. 378; Nixon's case, 68 Ala. 535. "
 V.
Under the heading of a single enumerated issue presented by appellant, he groups some contentions to the effect that the trial court erred in overruling defendant's objections to several items of evidence, or motions to exclude such evidence, on the ground that it constituted hearsay testimony. Some of the items are found during the direct examination of Mr. Newman as follows:
 ". . . Mr. Newman, did you receive information as to where your truck was?
"MR. PARKER: We object to that as hearsay.
"A. Yes, sir.
 "MR. PARKER: We move to exclude that answer. That would involve hearsay also.
"THE COURT: Overruled.
"Q. How did you receive this information, Mr. Newman?
 "MR. PARKER: We object and assign Constitutional grounds at this point and hearsay also.
"THE COURT: What Constitutional ground?
 "MR. PARKER: The Fourth Amendment of the United States Constitution and the Alabama Constitution, I forget the number right off hand.
 "THE COURT: Are you asking him how he got this information?
"MR. JOHNSTON: How he received the information.
"THE WITNESS: Phone call.
"THE COURT: Overruled.
"Q. Do you know who it was that called you?
"A. No, sir.
 "Q. So, as far as you know, the person that told you where your trucks were is not identifiable by you?
"A. Right.
 "Q. Now, just hold up on this answer. Did they tell you where the trucks were?
 "MR. PARKER: Object to hearsay and we ask that the witness not respond until the Court rules on my objection.
"THE COURT: I'm going to sustain that. *Page 64 
 "MR. PARKER: We move to ask the jury not — he did his head up and down.
 "THE COURT: The jury should disregard the answer to the last question. Motion to exclude is granted.
"Q. When did you receive the call, Mr. Newman?
"A. On May 25.
"Q. Do you remember what day of the week?
"A. Tuesday.
"Q. Tuesday?
"A. Tuesday morning.
 "Q. And, as a result of that call, have you been able to locate your trucks?
 "MR. PARKER: We again object, Judge. This is some sort of procedure that is getting into what I'm objecting to and it applies to identification subsequent to the time he lost the truck.
"THE COURT: I overrule. You can answer.
 "Q. As a result of this call, did you find your truck.
"A. Yes, sir.
 "MR. PARKER: I ask it, again. I have to object again and say the same grounds.
"THE COURT: Overruled.
"Q. You did?
"A. I did find the truck.
"Q. Where did you find it?
 "MR. PARKER: We object and assign the same grounds that it invades our Constitutional rights and it is prejudicial, if Your Honor please.
 "THE COURT: I am going to sustain and, I think, probably, you need to, at this point, take up another matter before you go further."
Promptly thereafter, the jury was excused from the hearing for a rather lengthy period, in response to the statement of the judge:
 "Members of the jury, we need to excuse ourselves and take this up outside your presence."
From this point, on page 30 of the transcript until page 62 of the transcript, testimony was taken and a hearing was conducted out of the presence of the jury, pertaining to the question as to whether defendant's Fourth Amendment right to security against unreasonable searches and seizures had been violated. It is to be noted from the quoted portion of the direct examination of Mr. Newman, that the trial court definitely ruled for the defendant as to some of the testimony of the witness that could be considered hearsay testimony. Some of defendant's objections and motions were overruled; some were sustained. We are unable to conclude that there was any error prejudicial to defendant during any of the direct testimony of Mr. Newman quoted above. We have quoted all of Mr. Newman's testimony that is to be found on page 29 of the transcript, which is the only page to which specific reference is made in appellant's brief as to any testimony of Mr. Newman that appellant challenges as hearsay.
Appellant also contends that during the testimony of two other witnesses for the State the trial court erroneously admitted "hearsay testimony . . . prejudicial to the defendant." The witnesses were Deputy Vernon Hudson, Jr., of the Fayette County Sheriff's Department and Deputy Joel Guthrie, of the Walker County Sheriff's Department. During the direct examination of Deputy Hudson, the following occurred:
 "Q. Tell the jury, if you will, how you were first contacted to conduct that investigation.
 "A. Mr. Newman called and advised us he had information —
"MR. PARKER: Judge, we object to hearsay.
 "THE COURT: Overruled. He's not offering the truth of it, just the sequence of events.
 "A. He called and said he had information where his trucks was and he told us the location of where he thought they might be and me and Trooper Elliot proceeded to that location.
". . . *Page 65 
 "Q. All right. Was there a conversation between Mr. Hershel Phillips there and Joel Guthrie?
"A. Yes, sir.
"Q. Could you hear what was said?
 "A. No, sir, I talked to Mr. Guthrie and advised him —
"MR. PARKER: We object to hearsay.
 "MR. JOHNSTON: What he said is not hearsay, Your Honor.
"A. I talked with Mr. Guthrie —
 "MR. PARKER: We would like a ruling on that, if it please the Court.
 "THE COURT: Overruled, if he's going to say what he said.
 "MR. PARKER: We object to that as a part of a hearsay conversation.
"THE COURT: Overruled.
 "A. I talked to Mr. Guthrie and advised him of what the situation was because he was a deputy in Walker County and we was going to need his assistance. Okay. When I talked to him, I told him that about the trucks, that we had information that the trucks was there and that we thought about getting a search warrant and he said, `There's no use in that, let me talk to Mr. Phillips. I believe we can get permission.' I said, `All right.' He went over there and talked to him and come back and said, `Mr. Phillips —
 "MR. KNIGHT: Your Honor, I object to what somebody came back and said to this man as being hearsay.
"THE COURT: I sustain.
 "MR. PARKER: We move to exclude his entire testimony of that conversation.
"THE COURT: Overruled. The motion is denied."
During the direct examination of Deputy Guthrie, the following occurred:
 "Q. Did you receive a call to assist some Fayette County officers in an investigation of an alleged theft on that day?
"A. Yes, sir, I did.
 "Q. Tell the jury, if you would, please, sir, how you received the call and what you did in response to the call.
"A. I was advised by Sheriff Trotter —
"MR. PARKER: We object to hearsay.
"THE COURT: I overrule.
"Q. Go ahead.
 "A. Advised by Sheriff Trotter to proceed to the Walker and Fayette County line on Highway 102 to meet with the Fayette County Sheriff's Department officers. I met with the officers near Hershel Phillips' residence on 102. I was advised —
 "MR. PARKER: We object, again, to hearsay that he's about to say.
 "MR. JOHNSTON: I might point out to the Court that that conversation is already in the record.
 "THE COURT: It's hearsay, but I don't think it's inadmissible hearsay. It's a sequence of events not being offered, as I understand it, for the truth of anything, merely to show what happened. I overrule.
"Q. You may go ahead, sir.
 "A. I met Chief Deputy Billy Lay and Deputy Hudson there and they advised me they had received information that there was some stolen truck on the Phillips' property. And, I asked the officers did they have a search warrant and they said no and shortly after this Mr. Hershel Phillips came down the road and I flagged him down.
 "MR. PARKER: We object to any hearsay as to conversations with Mr. Hershel Phillips.
"THE COURT: Overrule.
 "A. Mr. Phillips stopped and I advised him of the nature of our business there and asked him for consent to search his property for any stolen truck, to which Mr. Phillips consented.
 "Q. All right, tell us exactly what was said, if you could.
 "MR. PARKER: We object to the hearsay and, secondly, that is not probative. It's not evidence that is material to the indictment in this case.
"THE COURT: Overruled.
"Q. Go ahead. *Page 66 
 "A. I just told him that Fayette County officers had received information that there was some stolen trucks.
 "THE COURT: Excuse me, let me interrupt. Don't go about it in that manner. I'm in effect sustaining the objection to talking about the property and so forth. Just talk about the search and what you're going to do there. The jury should disregard this particular statement he just made.
 "Q. I advised Mr. Phillips that we wanted to search his property.
"Q. For stolen property?
"A. Yes, sir.
"Q. All right. What did he say to you?
 "MR. PARKER: We object to hearsay and it's not material. It's not relevant under this indictment.
"THE COURT: Overruled.
"A. He said yes I could search his property."
The numerous objections interposed by defendant to the testimony of officers as to what was said among themselves and as to what was said by defendant's father to them when they met defendant's father in the road "near Mr. Phillips' residence" were apparently addressed to anything and everything said by the officers or by Mr. Phillips. By specific reference in appellant's brief to the statements made by Mr. Phillips to the officers, appellant urges that his statement also, all of it, constituted inadmissible hearsay testimony. We are thereby somewhat placed in the position of the Supreme Court of Alabama in the case of Fontaine v. Beers, 19 Ala. 722 (1851), which involved an appeal from a judgment on an execution by officers of an ancillary attachment upon a seagoing vessel, in which it was held, per Justice Chilton, at 19 Ala. 728:
 "The authorities, generally, agree that the declarations of one in possession of either real or personal property, explanatory of the possession, may be received as evidence, since they constitute a part of the res gestae; but declarations explanatory of past transactions, or as to the mode in which title was acquired or is held by a third person, not explanatory of the possession, are disallowed. According to this rule, a portion of the proof which the court was asked to exclude was indisputably legal, and if it were conceded that other portions were not, still as the objection applied to the whole, the court properly overruled the motion to exclude it. It is settled that it is not the duty of the court, in such cases, to distinguish and separate that portion which is legal from that which is not; but it may refuse such general motion to exclude the whole. — Borland v. Walker, et al., 7 Ala. 269; Donnell v. Jones, 13 Ala. 490 [48 Am.Dec. 59]. It is unnecessary, therefore, for us to criticize the evidence and to decide what portion, if any of it, was illegal."
In our opinion, there was no error prejudicial to defendant in any of the rulings of the trial court on any of the objections to the proffered testimony, or motions to exclude the testimony, of any of the witnesses called by the State, on the ground that the same constituted inadmissible hearsay evidence.
 VI.
Under the above captioned portion of this opinion, we discuss one of the issues presented by appellant, which is thus stated in appellant's brief:
 "Evidence not alleged in the indictment of highly prejudicial nature permitted over objection."
Appellant argues such issue in four brief paragraphs in which reference is made to testimony of Deputy Hudson and Deputy Guthrie as to a truck, "a truck engine in the back of a pickup," a "bumper and tag" of a motor vehicle, various and sundry parts of trucks or other motor vehicles and photographs of some of said items. In each instance of any objection to such evidence, the ground stated by defendant was substantially the same as the following ground:
 "We object to that as not being within the pleadings of this case, Your Honor." *Page 67 
In our opinion, such was not a valid ground of objection to any of such evidence. Certainly, the ground was nothing more than a general ground of objection. In addition, we should note that as to most of such items of evidence, evidence as to such items was introduced without any objection by defendant, as shown by the following, during the direct examination of Deputy Hudson:
 "A. After this, we established the fact that there was some stolen stuff on the property that belonged to Mr. Newman so not knowing exactly some of the other stuff that he had stolen —
 "MR. PARKER: We object to that, if Your Honor please, and may we request that he ask questions as opposed to letting him answer like this.
"THE COURT: Ask him some specific questions?
"Q. What else did you find, please, sir?
 "A. We found several oil filters. If you will hand me my report I can tell you more.
"Q. Is this your stuff here (indicating)?
 "A. Yes, sir. Okay. We found two Delco starters, an 85 amp alternator, two Cummings head gasket sets, one set of rod bearings, two Cummings fuel pumps, about 13 inner wheel nuts, 13 adjustments for wheels, one thin wall set of deep well Craftsman sockets, one set of shallow well inset sockets, one set of 38 drive inset sockets, one-sixteenth deep well socket and one one-eighth deep well socket and, of course, we found several, about four, you know, door mirrors off the trucks and we found the sleepers at the back of the shop, the chrome pipes off of the trucks, numerous items off of both trucks.
"Q. Off those trucks?
"A. Yes, sir.
"Q. Did you come back up there the next day?
"A. No, sir.
"Q. You didn't?
"A. Huh-uh.
 "Q. So, you weren't there when any of this was removed, if it was?
 "A. The only thing I was there when it was removed was the truck with the engine and the sleepers.
"Q. That same day?
"A. Yes, sir.
"Q. With the sleepers?
"A. Yes, we had the sleepers removed.
 "Q. If anything else was removed, it was removed after that, as far as you know?
"A. Yeah.
"Q. All right.
"MR. JOHNSTON: You may cross-examine.
 "CROSS-EXAMINATION"
We are unable to determine that there was any error prejudicial to defendant in any of the rulings of the trial court as to the admission in evidence as to various and sundry items, as well as photographs of such items, that were found on the premises of defendant and the adjoining premises of his father on May 25, 1982, or thereafter.
 VII.
Appellant complains of the following portion of the Court's oral charge:
 "Now, a person commits the crime of theft of property in the 1st. degree if with intent to deprive the owner of his property he knowingly obtains or exerts unauthorized control over the property of another and the property taken in this case is a motor vehicle."
Immediately after the recital of the above-quoted portion of the court's oral charge, it is stated in appellant's brief, "The question of whether there was a motor vehicle stolen should be determined by the legal proof not a matter of fact stated by the court." Although the portion of the charge above quoted may have been made clearer by the insertion of another "if" immediately after the word "and" and immediately before the words "the property taken in this case was a motor vehicle," we have no doubt that the entire sentence, when considered with the language of the entire oral charge, is to *Page 68 
be properly construed as in accord with the language of Code of Alabama 1975, § 13A-8-3 (b), which states, "The theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree." The court had stated in its oral charge:
 "To sustain the charge of theft of property in the first degree in this case, the State, by the evidence, must prove beyond a reasonable doubt each of the following elements of the crime: 1) that the defendant, Larry Richard Phillips knowingly obtained or exerted unauthorized control over property that is owned by Owel Newman, 2) that he did so with the intent to deprive the owner of his property and 3) that the property was a motor vehicle."
The criticism of the quoted portion of the court's oral charge is not deserved.
Although we have had considerable difficulty in doing so, we have attempted to determine all of the comingled issues presented by appellant. We conclude that none sets forth the commission of error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.
[1] In reaching this conclusion, however, the writer of this opinion thinks it appropriate to confess his deep-seated aversion to the modern invasion into the courtroom of the abuse, by excessive use nowadays, of the expression, "Okay."