Johnny Holley, Jr., was convicted by a jury in Tuscaloosa County for robbery in the first degree and later was sentenced to life without parole when the Alabama Habitual Felony Offender Act was invoked upon a showing of seven prior felony convictions.
Johnny Holley, Jr. was identified by witnesses as the man they saw on Sunday, January 13, 1980, outside the Chapel A.M.E. Zion Church in Tuscaloosa County, carrying a box of tools away from a truck belonging to Baylock Sledge. No one saw him break into the truck, and when Holley was accosted he stated that he had bought the tool box. When Sledge and others pursued the appellant, Holley set the box down, pulled a knife and moved toward Sledge. As Sledge and the others drew near, Holley warned, "Don't come up on me or I'll cut the hell out of you." He started to "wave" the knife, but then turned and ran away. The next day the appellant was arrested after being chased into a wooded area.
After the State completed its case, the appellant made a motion to exclude the State's evidence because the State had failed to make out a prima facie case. The motion was denied and the appellant rested his case without presenting any evidence.
Subsequently, the jury returned a guilty verdict and the court adjudged the appellant guilty in accordance with the jury's verdict. Afterwards, the State requested a sentencing hearing so that evidence could be presented as to the accused's record.
A sentencing hearing was held after the appellant had been given reasonable notice. At the hearing, the appellant was represented by counsel and no objection was made to the sentencing hearing, nor was there a motion for a continuance.
During the sentencing hearing the State produced certified copies of judgment entries of seven prior felony convictions. Also, the State offered testimony of a police officer who had known the appellant for ten years and testified concerning his knowledge of two grand larcenies and one burglary in which the appellant had been involved.
The appellant did not produce any witnesses during the sentencing hearing, but his attorney did take advantage of the opportunity to cross-examine one of the two State witnesses.
At the completion of the sentencing hearing and arguments by the parties, the trial court found that the appellant, after having been previously convicted of seven felonies in Alabama, committed the offense of robbery in the first degree. The court therefore sentenced the appellant to imprisonment for life without parole, pursuant to § 13A-5-9 (c)(3), Code of Alabama 1975.
 I
The appellant contends that the Alabama Habitual Felony Offender Act, § 13A-5-9 (c)(3), Code of Alabama 1975, is unconstitutional as applied to him.
First, he argues that the statute is constitutionally impermissible because the prior felony convictions charged to him were not alleged in the indictment. In support of this contention, he cites Funches v. State, *Page 213 56 Ala. App. 22, 318 So.2d 762, and Wilson v. State, Ala.Cr.App., 371 So.2d 932.
Funches v. State, supra, involved a trial for possession of heroin after having been previously convicted of a controlled substance offense. The offense in Funches, involving T. 22, § 258 (53), (a)(b), Code of Alabama 1940, Recompiled 1958, which provided for the enhancement of punishment upon conviction of a second or subsequent offense relating to narcotic drugs, required the allegation and proof of a prior narcotics conviction.
Wilson v. State, supra, involved a capital murder offense which required by statute an allegation of the prior murder conviction in the indictment.
In our judgment, the foregoing cases are clearly distinguishable and not applicable to the facts or the law in the case at bar.
The United States Supreme Court, in Graham v. West Virginia,224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917, addressed the issue of the constitutionality of the habitual offender act in West Virginia. In particular, the court discussed the question whether an accused was denied due process of law where the information charging him with prior convictions was not alleged in the indictment. There the Supreme Court said:
 "[I]t cannot be contended that in proceeding by information instead of by indictment, there is any violation of the requirement of due process of law.
 "Although the state may properly provide for the allegation of the former conviction in the indictment, for a finding by the jury on this point in connection with its verdict as to guilt, and thereupon for the imposition of the full sentence prescribed, there is no constitutional mandate which requires the state to adopt this course even where the former conviction is known. It may be a convenient practice, but it is not obligatory." (Emphasis added.)
In Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446, the United States Supreme Court stated:
 "[T]he determination of whether one is an habitual criminal is `essentially independent' of the determination of guilt on the underlying substantive offense. . . . `it is a distinct issue, and it may appropriately be the subject of separate determination.'. . . . [D]ue process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding."
Therefore, "advance notice" of the State's intention to proceed against Holley as a recidivist prior to his trial for the "substantive offense" which triggers the operation of the Alabama Habitual Felony Offender Act, supra, was not required. The Supreme Court in Oyler v. Boyles, supra, held that, although due process does not require notice prior to trial on the "substantive offense," a defendant must have "reasonable notice", and an opportunity to be heard relative to the recidivist charge, and the assistance of counsel.
The Alabama Habitual Felony Offender Act provides for those requirements as laid down in Oyler v. Boyles, supra. Section13A-5-10 (a), provides that procedures be established by the court. Section 13A-5-10 (a) reads:
 "The court may conduct a hearing upon the issue of whether a defendant is a repeat or habitual offender under section 13A-5-9, according to procedures established by rule of court."
The Supreme Court of Alabama, on February 8, 1980, promulgated "temporary rules" entitled "Alabama Rules of Criminal Procedure-Temporary Rules." Those rules became effective on February 23, 1980, and in pertinent part, appear as Rule 6 (b)(3)(i), (ii), (iii).
"(3) Habitual Felony Offenders.
 "(i) In any case involving an alleged habitual felony offender as provided in Act 607, § 1235, Acts of Alabama 1977, p. 812, as amended by Act 79-471, Acts of Alabama 1979, p. 862, and as amended by Act 79-664, Acts of Alabama 1979, p. 1163 (§ 13A-5-9, Alabama Criminal Code, as amended), after a determination of guilt, the court on its own motion, or on a *Page 214 
motion of the district attorney or other prosecutor, or on motion of the defendant, shall hold a hearing at a date to be set by the court, if such hearing is necessary in order to establish the alleged prior conviction or convictions in the record.
 "(ii) At a reasonable time prior to the hearing the defendant shall be given notice of the prior conviction or convictions upon which the State intends to proceed.
 "(iii) At the hearing the burden of proof shall be on the State to show that the defendant has been convicted of a previous felony or previous felonies. Disputed facts shall be determined by the court by a preponderance of the evidence. Evidence may be presented by both the State and the defendant as to any matter the court deems relevant to the application of the law. The State or the court may examine the defendant under oath at the hearing as to relevant matters. If at the hearing the defendant disputes any conviction presented by the State, the court may allow the State to present additional evidence of the disputed conviction, either by way of rebuttal or at a future time to be set by the court."
The record reflects that after the jury returned its verdict, the State informed the court that it was requesting a sentencing hearing so that it could present evidence as to the appellant's record. Also, the record reflects that pursuant to Rule 6 (b)(3)(ii), of the Alabama Rules of Criminal Procedure Temporary Rules, the State gave written notice after the appellant's trial and prior to the sentencing hearing. Further, the record indicates that a sentencing hearing was held on April 11, approximately two days after the jury had found the appellant guilty on the "substantive offense."
Therefore, it is our judgment that allegations of prior felony convictions in an indictment are not required under the Alabama statute, nor is it constitutionally impermissible under the United States Constitution to determine separately whether one is an habitual criminal. Due process does not require advance notice prior to trial on the "substantive offense" which triggers the operation of the Alabama Habitual Felony Offender Act. Only reasonable notice is required and that was given in the case at bar.
 II
The appellant also raises the issue of unconstitutionality in regard to the Alabama Habitual Felony Offender Acts as applied to him because the court was not allowed to consider any mitigating circumstances. In support of his contention, the appellant has cited Williams v. People of State of New York,337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, and Lockett v.Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973. Each of these cases involved a death sentence.
In this context, we note that, in Rummel v. Estelle,445 U.S. 263, 63 L.Ed.2d 382, 100 S.Ct. 1133, the court stated:
 "Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel."
We believe that due to the unique nature of the punishment involved in these cases their rationale would be of questionable assistance in recidivist cases. In Williams v.People of State of New York supra, the question was whether the rules of evidence were applicable to the manner in which the trial judge may obtain information that guides him in the imposition of sentence against a person who has already been convicted. In Williams v. People of State of New York, a New York statute existed which required the trial judge, before pronouncing sentence, to have submitted to him the accused's criminal record and the results of any mental, psychiatric, or physical examination. Further, the statute said that the trial judge could seek any information that would aid him in determining the proper sentence.
The question then in Williams v. People of State of New York, supra, was not *Page 215 
whether the trial judge was constitutionally mandated to consider mitigating circumstances before sentencing, as appellant insists, but whether the information that he received prior to sentencing in accordance with the statute offended due process because the defendant had no opportunity to confront the people providing that information to the trial judge.
In Lockett v. Ohio, supra, the Supreme Court recognized:
 "[I]n noncapital cases, the established practice of individual sentences rests not on constitutional commands but public policy enacted into statutes."
The court went on to say:
 "Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases."
It is clear that these cases are distinguishable and do not give support to the contention of the appellant that he accords to them.
Section 13A-5-9 (c), Code of Alabama 1975, in pertinent part, reads:
 "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
. . . .
 "(3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole." (Emphasis added.)
These provisions of the Alabama Habitual Felony Offender Act leave no discretion with regard to sentencing for a Class A Felony as § 13A-5-9 (a), and § 13A-5-9 (b) do.
In our system of government the Alabama legislature makes the law, the governor executes it and the courts construe and enforce the law. The legislature alone is given the authority to fix the maximum and minimum punishment for all crimes. No discretionary power is given to the courts in this respect unless it be conferred by law. Under the mandate found in §13A-5-9 (c)(3), a criminal defendant convicted of three felonies who commits a subsequent felony must be punished by imprisonment for life without the benefit of parole. No inherent power exists in the courts to modify statutes in this respect, even where exceptional circumstances or cases exist.
In our judgment, the Alabama Habitual Felony Offender Act, Code of Alabama, 1975, is not unconstitutional because it does not provide for the consideration of any mitigating circumstances involving the appellant recidivist.
 III
The appellant asserts that his sentence of life without parole under the Alabama Habitual Felony Offender Act constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In support of this contention, the appellant has cited Coker v. Georgia,433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982. This case, and other death cases, noted by the United States Supreme Court in Rummel v.Estelle, supra, due to their "unique nature" are of "limited assistance" in applying the "constitutional prohibition" against cruel and unusual punishment to cases other than capital.
In Rummel v. Estelle, supra, the Supreme Court noted:
 "Given the unique nature of the punishments considered in Weems and in the death-penalty cases, one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative."
The United States Supreme Court in earlier cases reached the same conclusion that it was not cruel and unusual punishment in cases involving recidivists. In McDonald v. Commonwealth ofMassachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542, assessing the *Page 216 
Massachusetts statute involving habitual criminals, the court stated:
 "The statute does not impair the right of trial by jury or put the accused twice in jeopardy for the same offense or impose a cruel or unusual punishment."
In that case, McDonald had four previous convictions, (2 forgery, 1 false pretense and 1 perjury) and he was adjudged guilty and sentenced as an habitual criminal to be punished by imprisonment in the state prison for the term of twenty-five years.
In 1912, the Supreme Court decided the case of Graham v. WestVirginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917, which involved a horse thief who had been sentenced to life in prison under the West Virginia recidivist statute. Prior to his sentence, Graham had been convicted of stealing horses on three different occasions. In that case, the Supreme Court stated:
 "What has been said, and the authorities which have been cited, sufficiently show that there is no basis for the contention that plaintiff in error has been put in double jeopardy, or that any of his privileges or immunities as a citizen of the United States has been abridged. Nor can it be maintained that cruel and unusual punishment has been inflicted."
Recently, the Supreme Court of the United States in Rummel v.Estelle, supra, held that the mandatory life sentence imposed upon Rummel did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments. In Rummel v.Estelle, the court noted:
 "Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction."
Historically, life imprisonment has been employed by the state and the federal government as punishment for crimes. An assertion that life imprisonment is cruel and unusual punishment cannot be successfully supported.
The right to a parole is a privilege granted by the people of Alabama to those committed to our penal institutions as punishment for crimes. Withholding this favor by an act of the legislature for any particular class of criminals for whom this privilege is unmerited cannot be said to inflict punishment which is either cruel or unusual. Granting or denying parole to any particular class of criminal is a matter of discretion which is left to the legislature of our government, and the courts should not interfere. It seems clear that, when one by his conduct, has indicated that he is an habitual criminal, there is no reason for saying that society may not protect itself from his "future ravages." It is not cruel or unusual punishment to say that an habitual criminal should receive the punishment based upon his criminal proclivities.
Therefore, it is our judgment that the sentence meted out to Holley of life imprisonment without benefit of parole was not cruel or unusual punishment and not in conflict with the Eighth Amendment of the United States Constitution.
We have examined the record and transcript of evidence and have found the evidence, submitted by the State, was sufficient and find no error prejudicial to appellant. Therefore, the judgment of conviction by the Tuscaloosa Circuit Court is affirmed.
AFFIRMED.
All the Judges concur. *Page 217