Theft of property in the second degree — habitual criminal treatment; sentence: fifteen years' imprisonment.
Between 10:30 or 11:00 p.m. on December 31, 1979, and 9:00 or 9:30 a.m. on January 1, 1980, several items of personal property were taken from the residence of Mrs. Evelyn Hamm. With the exception of one item, all of the stolen merchandise belonged to Mrs. Hamm's son, Melvin Reynolds. Reynolds had resided with his mother and step-father since April 1977 and had a bedroom in the residence for his private use. All of the items stolen had been located in Reynolds's bedroom. An investigation conducted by the Jefferson County Sheriff's Department discovered fingerprints in the bedroom matching those of the appellant. Subsequently, the appellant was arrested and charged with the instant offense. *Page 1096 
 I
In the appellant's motion to exclude the State's evidence, he alleged that three fatal variances occurred between the allegations in the indictment and the proof at trial which mandate a reversal of this cause.
 A
Appellant asserts that the indictment improperly placed ownership of one stolen television set in Melvin Reynolds when, in fact, Reynolds's testimony proved that it belonged to his mother, Evelyn Hamm. At trial Reynolds testified that he had bought the television set in question for his mother approximately one year prior to its theft. However, Reynolds's testimony proved that, although the television was owned by his mother, it was nevertheless within his possession and was located in his bedroom at the time it was stolen.
Section 13A-8-1 (8), Code of Ala. 1975 (amended 1979), defines an owner as "[a] person, other than the defendant, who has possession of or any other interest in the property involved, even though that interest or possession is unlawful, and without whose consent the defendant has no authority to exert control over the property." (Emphasis added.) In this regard the new criminal code definition of owner makes no change from our former rulings. See Mauldin v. State, Ala.Cr.App., 376 So.2d 788, cert. denied, Ala., 376 So.2d 793
(1979). Therefore, the trial court properly overruled the appellant's motion to exclude on that ground.
 B
Secondly, appellant insists that the indictment charged him with theft of property in the first degree while the proof at trial established only theft of property in the second degree.
The indictment sets out the monetary value of the stolen property to be $937 which is clearly within the statutory limits of theft in the second degree. Code § 13A-8-4. Although the indictment cites Code § 13A-8-3, which refers to theft in the first degree, the testimony at trial established the monetary value of the items to be $875 which proves theft in the second degree.
It is unnecessary to set out in an indictment the code section or statute under which an accused is charged. Matters of which judicial notice is taken need not be stated in an indictment. Frye v. State, Ala.Cr.App., 369 So.2d 892 (1979); Code § 15-8-32.
The evidence adduced at trial established the value of the stolen items well within the statutory limits of the offense for which the appellant was charged and convicted — theft of property in the second degree. Whether or not a theft in a particular case is of one degree or another is a question of fact addressed to the jury. Bell v. State, Ala.Cr.App.,364 So.2d 420, cert. denied, Ala., 364 So.2d 424 (1978); State v.O'Quinn, La., 342 So.2d 202 (1977). For a variance to be material, it must mislead the accused or be substantially injurious to him in making his defense. Tyson v. State, Ala.Cr.App., 361 So.2d 1182 (1978). Here, the value of the stolen articles was clearly set out in the indictment, and the fact that an incorrect code section was inserted in the indictment would create no material variance which would mislead the accused to such a degree as to substantially impede his efforts in making his defense. Consequently, the trial court correctly overruled the appellant's motion to exclude on the instant ground.
 C
Lastly, the appellant argues that the State had the burden of proving the time of the commission of the offense. He asserts that the time is an element of the crime and, without positive proof, an ex post facto application of the new criminal code could occur.
Mrs. Evelyn Hamm testified that she and her husband spent Christmas away from home and returned between 9:00 and 9:30 a.m. on January 1, 1980. She discovered the theft at that time when she found that the screen had been removed from the window *Page 1097 
in her son's bedroom and the window was open. Mrs. Hamm's daughter, Jane Ousley, testified that while her mother was out of town she checked the house every day. She stated that Melvin Reynolds, her stepbrother, was residing at the house while her mother was out of town. However, on December 31, 1979, he was out of town also. Mrs. Ousley stated that the last time she checked her mother's house prior to learning of the break in was between 10:30 and 11:00 p.m. on December 31, 1979. The new criminal code became effective at 12:01 a.m. on January 1, 1980. Code § 13A-1-11.
The uncontradicted evidence at trial indicates that the instant crime occurred somewhere between 10:30 and 11:00 p.m. on December 31, 1979, and 9:00 or 9:30 a.m. on January 1, 1980. The trial court charged the jury, in pertinent part, as follows:
 "Now, ladies and gentlemen, the charge embraced within this indictment is called theft. And, it's under our new criminal code, and I am going to read to you verbatim from the new criminal code, and the new criminal code went into effect January 1, 1980, at 12:01 A.M. And, I want to charge you right now that if you should find from the evidence that the act, the basis of this offense occurred prior to 12:01 A.M. on January 1, 1980, then you cannot convict this defendant of this charge."
Theft of property is defined as knowingly obtaining or exerting unauthorized control over the property of another with the intent to deprive the owner of his property. Code §13A-8-2. Time is not a necessary element of the offense. Only in those offenses where time is made an element or a material ingredient of the charge must it be alleged in the indictment and proved beyond a reasonable doubt. Code § 15-8-30. Consequently, the application of Code §§ 13A-8-2 and -4 depends upon the finding of a fact which is not an element of the offense.
In the instant case the State had the burden of proving that the offense occurred on or after the effective date of the new criminal code. That fact must have been established to the satisfaction of the jury. No presumption favorable to the State as to the time of the crime exists. Furthermore, it is not a defensive matter which must be proved by the appellant that the crime occurred prior to the effective date of the new act. See Me.Rev.Stat., Tit. 17-A, § 1 (Supp. 1980); Comments to N.J. Stat.Ann., § 2C:1-13 (West Supp. 1980).
Under the facts and circumstances of the instant case, we find the evidence sufficient for the jury to have found that the theft occurred on January 1, 1980. The evidence showed that there was only one to one and one-half hours between the last check of the premises and the effective date of the new code. The thief had that short period of time plus nine to nine and one-half hours after the code became effective to commit the crime.
In determining the length of time it would have taken to have committed the crime in question, the jury could well have taken into consideration many factors including some of the following:
(1) The location of the window entered, its size and its height off the ground.
(2) The degree of difficulty in removing the screen and opening the window.
(3) The degree of difficulty in entering the window.
(4) The number of items stolen and their location in the house.
(5) The size, shape, bulk and weight of the stolen articles.
(6) The degree of difficulty in locating and gathering up the stolen items.
(7) The degree of difficulty in removing the stolen items through the window.
Considering all of the above and other inferences which could be drawn from the evidence, the jury could certainly infer that even if the appellant broke into the house immediately after it was last checked, he could not have located and moved the stolen items prior to 12:01 a.m.
Likewise, there was testimony that a micro-wave oven that had been stored elsewhere was found on Reynolds's bed when *Page 1098 
the theft was discovered. The oven had mud on it and was found sitting "halfway on the bed" and appeared to be "ready to fall off" the bed when discovered. The jury could reasonably infer from this fact that the thief was surprised when Mrs. Hamm returned home on the morning of January 1 and that he fled, leaving the oven teetering on the edge of the bed. We therefore believe that the jury could reasonably infer from the evidence that the crime in question occurred after the new criminal code became effective. Thus, the trial court was not in error in overruling the appellant's motion to exclude on this ground.
 II
The appellant asserts that he was improperly sentenced under the habitual criminal statute, Code § 13A-5-9, as he was neither indicted nor tried as an habitual offender.
Our habitual offender statute does not create a new crime. Rather, it merely enhances the punishment of the present crime because of the defendant's prior convictions. Watson v. State, Ala.Cr.App., 392 So.2d 1274 (1980); Smith v. State, Ala.Cr. App., 392 So.2d 1273 (1980). Code § 13A-5-9 does not punish the appellant for past conduct, but merely increases the punishment for his latest offense. Williams v. State, Ala.Cr.App.,393 So.2d 492 (1981). The habitual offender statute was effective at the time the appellant committed the instant offense. It specified the punishment for anyone who commits a felony after having been previously convicted of a felony or felonies. At the time the appellant contemplated committing the instant felony, he was charged by law with knowledge that if he committed the felony he would be subject to punishment under the habitual offender statute. The statute therefore had no ex post facto application.
A determination of whether or not a defendant will be punished as a habitual offender need only be made after there has been a determination of guilt in the present offense. Alabama Rules of Criminal Procedure, Temporary Rule 6 (b)(3)(i). Therefore, reference to the habitual offender act need not be made in the appellant's indictment.
We have considered the appellant's allegations of error contained in brief and have reviewed the record pursuant to Code § 12-22-240, and we find no reversible error.
AFFIRMED.
All the Judges concur.