**J.W. RICKETT, Petitioner–Appellant,**

v.

**Charles JONES, Warden (St. Clair) and The Attorney General of the State of Alabama, Respondents–Appellees.**

No. 89–7357.

United States Court of Appeals, Eleventh Circuit.

May 22, 1990.

---

J.S. Rickett, Springville, Ala. and Rick L. Burgess, Birmingham, Ala., for petitioner-appellant.

Don Siegelman, Atty. Gen. and James B. Prude, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

1. The district court found as a matter of fact that only one of Battles' prior convictions should have been considered under the HFOA because two of the earlier convictions may have been uncounseled. To be considered under the HFOA, convictions must have been obtained with the assistance of counsel. *See Burgett v.*

Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

EDMONDSON, Circuit Judge:

■ The question is whether sentencing a repeat felony offender to life imprisonment in accordance with Alabama's mandatory Habitual Felony Offender Act ("HFOA" or "Act"), Ala.Code § 13A–5–9 (1975), constitutes an equal protection violation when a co-defendant, who was also a repeat offender, was not sentenced pursuant to the Act. The answer is "no".

Rickett was arrested on charges of theft and jailed. With the assistance of Battles, a fellow detainee, Rickett escaped from jail. The two were recaptured. Battles, on the eve of his trial, pleaded guilty to escape and theft in the first degree. Although Battles had prior convictions and should have been sentenced under the HFOA, the prosecutor in Battles' case erred in not learning of the earlier convictions before Battles' sentencing. Battles was sentenced to four years' imprisonment.

Later, Rickett had a jury trial and was convicted of first degree escape. Rickett was sentenced to life imprisonment without parole under the HFOA, based on evidence that Rickett had four prior felony convictions. *See* Ala.Code § 13A–5–9(c)(2) (1975). At Rickett's trial, Battles testified against Rickett and admitted having three prior felony convictions.[1] These admissions might have brought Battles within the scope of HFOA's mandatory life sentence for repeat felony offenders.

*Texas*, 389 U.S. 109, 114–15, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967); *Watson v. State*, 392 So.2d 1274, 1279 (Ala.Crim.App.1980). With just one prior conviction, Battles—unlike Rickett—was ineligible for a life sentence under the HFOA. Instead, Battles' Class B felony ought to have been enhanced to a Class A felony, with a minimum ten year sentence. *See* Ala.Code §§ 13A–5–9(a)(2) & 13A–5–6(a)(1) (1975).

Rickett argues that the dissimilar sentencing denied him equal protection.[2] We disagree. Rickett fails to establish an equal protection claim for two reasons.

First, the Supreme Court set out the controlling law on this issue in *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). The Court rejected the argument that application of West Virginia's recidivist statute to the *Oyler* petitioners violated the equal protection clause. The Court held that where "the allegations set out no more than a failure to prosecute other [ ] [three-time offenders] because of a lack of knowledge of their prior offenses[,] [t]his does not deny equal protection due petitioners...."[3] Here, the district court made a factual finding that Battles' record for prior felonies was unchecked due to a slip by the prosecutors and that the prosecutors were for that reason unaware of Battles' earlier convictions. So, in the light of *Oyler*, Rickett has failed to show an equal protection violation.

Second, even if *Oyler* does not bar Rickett, he fails to prove a violation of the equal protection clause. Rickett's evidence

in this case fails to show that, in Alabama, persons similarly situated to Rickett are generally not prosecuted and sentenced as habitual offenders. The HFOA is mandatory in its terms. *See Maye v. State*, 472 So.2d 688, 690 (Ala.Crim.App.1985); *Watson v. State*, 392 So.2d 1274, 1276 (Ala. Crim.App.1980). At most, Rickett has shown in Battles' case an isolated and random departure from the HFOA; and this is not enough.

■ No human institution is perfect, including courts of law. Occasional or random errors in application of state law will occur; but such errors do not constitute state policy, and they do not offend the equal protection clause of the federal Constitution.[4] Merely negligent conduct is insufficient to support a claim for denial of equal protection. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). The HFOA is facially neutral, applying equally to all repeat felony offenders. "Mere error or mistake in judgment when applying a facially neu-

**2.** It is important to note what is not at issue in this case. Rickett makes no arguments about classifications drawn by the Act. He makes no facial challenge to the constitutionality of the enhanced sentence for habitual offenders; nor does he challenge the application of the HFOA as either a deprivation of due process or the imposition of cruel and unusual punishment.

**3.** The *Oyler* Court, in reaching this conclusion, treated the pertinent West Virginia statute as if it were mandatory and state prosecutors had no discretion to avoid seeking the more severe penalty for recidivists. *See* 368 U.S. at 455 n. 10, 82 S.Ct. at 505 n. 10. Therefore, the difference between Alabama's statute and West Virginia's statute is unimportant for our purposes. *Oyler* is more than just a selective enforcement case; it deals directly with mandatory recidivist statutes. Only after the Court upheld the practice of treating repeat offenders differently based on differences in the prosecutor's knowledge about their prior offenses did the Court go on to discuss an alternative point: conscious selective enforcement.

**4.** The concurrence relies on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), but *Logan* is inapplicable. *Logan* was not decided on equal protection grounds; the Court did not address equal protection arguments. Therefore, what was said

about equal protection in concurring opinions is not controlling here.

Rickett asserts in the present case that he was deprived of equal protection by his prosecutors' conduct, but he does not argue that the HFOA makes improper classifications. *Logan* is materially different. *Logan* involved an Illinois statute which divided claimants into two categories. The Illinois Supreme Court had construed the statute in such a way as to produce categories; no Alabama high court has similarly construed the Alabama recidivist statute. Therefore, we continue to be faced here with a case of random error by state officials and not a state law classification or a state policy.

Finally, even if Justice Blackmun's concurring opinion in *Logan* were the controlling opinion of the Court, application of that opinion here would entail a significant extension (as opposed to a following) of the precedent. Nothing in *Logan*, including the concurring opinions, hints that, if a claimant, such as Mr. Logan, were barred from asserting his claim because he filed it too late to comply with the state statute, he could avoid application of the time bar by showing that state agents occasionally miscalculated when other people's claims were filed late and, therefore, mistakenly allowed those claimants to proceed, although they too should have been time barred. This hypothetical case would be much closer to Rickett's case than was *Logan*.

tral statute does not violate the equal protection clause. There must be intentional discrimination." *E & T Realty v. Strickland,* 830 F.2d 1107, 1114 (11th Cir.1987). Nothing suggests that the fourteenth amendment's equal protection clause was intended to serve as a shield against every human error. The Supreme Court has repeatedly rejected the contention that inequality due to error violates equal protection. *See, e.g., Beck v. Washington,* 369 U.S. 541, 554–55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962); *Charleston Federal S. & L. Ass'n v. Alderson,* 324 U.S. 182, 190, 65 S.Ct. 624, 630, 89 L.Ed. 857 (1945); *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944). *See also McCleskey v. Kemp,* 481 U.S. 279, 292–93, 107 S.Ct. 1756, 1766–67, 95 L.Ed.2d 262 (1987). Here, Rickett was sentenced in compliance with the HFOA's terms. Battles was lucky and, due to the prosecutors' oversight, escaped application of the full force of the HFOA. But this gift of chance to Battles does not mean that Rickett's constitutional rights were violated.

■ Rickett's claim, at best, is like one for selective prosecution. To make out such a case, a defendant must establish "that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution." *United States v. Johnson,* 577 F.2d 1304, 1308 (5th Cir.1978) (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)).

Rickett has not proved that he was singled out for harsh treatment.

■ The district court found that, while checks of prior records are routinely done, Battles' record was not checked due to an error in the prosecutors' office and that prosecutors did not know of Battles' earlier convictions when Battles was sentenced. The district court also found no reason to doubt the prosecutors' testimony or integrity when they testified that nothing was done invidiously against Rickett and that no special treatment was given to Battles. The district court's findings of fact are entitled to deference. Nothing in this record shows that Battles' record was not checked or that Rickett's record was checked because of an official's desire to punish Rickett (or to reward Battles) based on impermissible considerations such as race or religion or because of a desire to prevent Rickett's exercise of his constitutional rights. Intentional and purposeful discrimination is essential to a selective prosecution claim. *Johnson,* 577 F.2d at 1308.

■ Alabama prosecutors should be painstaking in checking about prior felonies. The intent of Alabama law is that all persons within the scope of the Act are to be punished in accordance with its terms. Carelessness in checking records can weaken the legislation's effectiveness. In addition, if failure to apply the HFOA were to become more than occasional and random, the federal Constitution might be violated, requiring federal court intervention.[5] But

---

5. No evidence submitted in this case shows a departure from the HFOA except in the single instance of Battles' case. In *McLester v. Smith,* 802 F.2d 1330, 1333 (11th Cir.1986), we rejected an eighth amendment challenge to the HFOA where Alabama acknowledged that in 1984 "seventy-eight persons in Alabama [were] serving sentences of less than life without parole following convictions for first degree robbery with prior convictions for felonies sufficient to invoke the mandatory sentence provisions of Title 13A–5–9."

The *McLester* statistic is useless to us because we do not know when the seventy-eight defendants were sentenced. We know only that in 1984 there were seventy-eight persons who at some point had been sentenced incorrectly because the HFOA had not been applied. Rickett

was sentenced in 1982; all seventy-eight errors could have occurred well before Rickett's sentencing or could have taken place a year or more after. Without more, that seventy-eight persons at some time were sentenced incorrectly under the HFOA does not establish a pattern of disparate treatment pertinent to Rickett's case.

The statistic is also useless because we do not know how many people were correctly sentenced under the HFOA, and thus we do not know what percentage seventy-eight incorrect sentences represents. The error rate could be low, and a low percentage of error would further support the idea that the failure to sentence Battles under the HFOA was a random and isolated error. Even if the error percentage were high, however, we might still reject Rickett's equal protection claim. In *Oyler,* the Su-

the record in this case fails to show a violation of the federal Constitution.

The judgment of the District Court denying this state prisoner federal habeas corpus relief is AFFIRMED.

JOHNSON, Circuit Judge, concurring in the judgment:

For reasons stated below, I agree that the judgment of the district court in this case should be affirmed. I write separately, however, to emphasize that Alabama has trod close to the line of unconstitutional irrationality in its application of the Habitual Felony Offender Act ("HFOA"), and to express my disagreement with the majority's reliance on *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

## I. THE RATIONAL BASIS COMPONENT OF EQUAL PROTECTION

The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The most basic and familiar principle of equal protection is that "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440, 105 S.Ct. at 3254. The Supreme Court has stated and applied this "rational basis test" in innumerable cases. The test has frequently been applied in a deferential manner to uphold economic and social legislation. *See, e.g., Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The standard is "not a toothless one," however, *see Schweiker*, 450 U.S. at 234, 101 S.Ct. at 1082–83, and the Court has applied it, for example, to invalidate laws irrationally discriminating against the mentally retarded, *see Cleburne*, 473 U.S. at 450, 105 S.Ct. at 3259–60 persons who have recently moved from one state to another, *see Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 618–23, 105 S.Ct. 2862, 2866–69, 86 L.Ed.2d 487 (1985), tenants unable to post excessive security bonds in rental disputes, *see Lindsey v. Normet*, 405 U.S. 56, 74–79, 92 S.Ct. 862, 874–77, 31 L.Ed.2d 36 (1972), and persons born out of wedlock, *see Glona v. American Guarantee & Liability Ins. Co.*, 391 U.S. 73, 75, 88 S.Ct. 1515, 1516, 20 L.Ed.2d 441 (1968).

Rickett concedes the legitimacy of the state interest in this case. Alabama's objective in enacting the HFOA, as authoritatively construed by its own courts, was quite simply to "prevent repetition and increase of crimes by imposing increased penalties upon repeat offenders." *Watson v. State*, 392 So.2d 1274, 1279 (Ala.Crim.

---

preme Court considered the possibility that "a high percentage of those subject to [West Virginia's recidivist] law have not been proceeded against," 368 U.S. at 456, 82 S.Ct. at 506, and still rejected the petitioners' equal protection claims.

Finally, we disagree that stipulations of fact made by a party in a separate case—even if the stipulation is memorialized in one of our opinions—can by means of judicial notice be used on appeal to decide this case. This is especially true where the district court's opinion does not show that the district court took such judicial notice, assuming the district court (N.D.Ala.) could take notice of evidence in another case in another court (M.D.Ala.). To use judicial notice, as we have been urged to do, is to change the case from that heard by the district court to something else and then to decide this different case relying on the judicially noticed additional fact.

This use of judicial notice is unfair to the district judge who decided the case on the evidence before him and unfair to defendants because they have been allowed no chance in this case to meet and to overcome the "noticed fact." In deciding this case, it seems best to stick to the record in this case; we ought to take no notice of evidence in other cases to supply facts essential to support an outcome in the present case. *See M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983); *Stevens v. Tennessee Valley Auth.*, 699 F.2d 314, 315 (6th Cir.1983); *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 510 (4th Cir.1977). *See also Garcia v. American Marine Corp.*, 432 F.2d 6, 8 (5th Cir.1970) (district court decision should not be reversed on basis of facts not in record).

App.1980), *cert. denied,* 392 So.2d 1280 (Ala.1981). The touchstone of the inquiry in this case is thus whether the disparate treatment of Rickett "rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

It is clear that if the state applied the HFOA to Rickett while knowingly and deliberately failing to apply it to similarly situated defendants, its policy would be irrational in the purest sense of the word.[1] Not only would such unequal treatment be "wholly irrelevant" to the law's goal, it would actually tend to defeat it. The state argues, and the district court below agreed, that the uneven application of the HFOA demonstrated in this case was not deliberate, but the result of an unintentional and excusable failure to discover the relevant information. The state argues, in effect, that it took reasonably diligent steps to uncover such information. The district court found, however, that the state failed to take even the minimal step of running a background check with state agencies which were in possession of the relevant information.[2] It is difficult to perceive what rational basis the state had for failing to run such a check.

Rickett's equal protection claim, while unconventional, is stronger than the majority's brief treatment of it might suggest. Although he does not challenge any explicit legal classification, his claim of purely random or arbitrary discrimination is cognizable under the reasoning adopted by six Justices in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71

L.Ed.2d 265 (1982). *Logan* involved a challenge to an Illinois law which provided an administrative hearing remedy to persons bringing employment discrimination claims. The law required that claimants bring claims within 180 days of the alleged discriminatory act, and that the Illinois Fair Employment Practices Commission ("FEPC") schedule a preliminary hearing within 120 days after the claim was brought. In *Logan,* the appellant timely filed a claim, but the FEPC, "[a]pparently through inadvertence," *id.* at 426, 102 S.Ct. at 1152, simply failed to timely schedule a preliminary hearing. As a matter of state law, Logan's claim, through no fault of his own, was therefore held forfeited. Justice Blackmun's majority opinion struck down the law on due process grounds. Justice Blackmun also issued a separate opinion, however, joined by Justices Brennan, Marshall, and O'Connor, finding that the law violated the equal protection clause. Justice Powell, joined by Justice Rehnquist, concurred separately in the judgment, also finding the law invalid on equal protection grounds.[3]

The state argued that Logan had "no more been deprived of equal protection than anyone would be who is injured by a random act of governmental misconduct." *Id.* at 438, 102 S.Ct. at 1159 (separate opinion of Blackmun, J.). Justice Blackmun conceded that Logan's claim was "unconventional" and that the law "establishes no explicit classifications." *Id.* He found, however, that the law "unambiguously divides claims—and thus, necessarily, claimants—into two discrete groups that are accorded radically disparate treatment.

1. The district court below found that the prosecutors in this case were subjectively unaware of Battles's prior convictions when they failed to invoke the HFOA. I agree that the district court's finding in this regard is not clearly erroneous.

2. The magistrate below specifically found that "Battles' record of convictions was on file, available to the district attorney's office had they executed a diligent search.... Apparently, the prosecutors just failed to take the time to check Battles' record." Magistrate's Report and Recommendation, March 1, 1989, at 14. "It appears from the testimony at the evidentiary hearing

that neither [the prosecutor] nor anyone in his office checked to see if Battles ... had any prior felony convictions." *Id.* at 15. These findings, which were adopted by the district court, are manifestly not clearly erroneous. Indeed, they appear strongly supported by the record.

3. Thus, a total of six Justices—Chief Justice Burger and Justices Brennan, White, Marshall, Blackmun, and Stevens—found the law to violate the due process clause, while a different coalition of six Justices—Justices Brennan, Marshall, Blackmun, Powell, Rehnquist, and O'Connor—found the law to violate the equal protection clause.

Claims processed within 120 days are given full consideration on the merits.... [O]therwise identical claims that do not receive a hearing within the statutory period are unceremoniously, and finally, terminated." *Id.* at 438–39, 102 S.Ct. at 1159; *accord id.* at 443–44, 102 S.Ct. at 1161–62 (Powell, J., concurring in the judgment) ("[The law] effectively created two classes of claimants: those whose claims were, and those whose claims were not, processed within the prescribed 120 days.... Under this classification, claimants with identical claims ... would be treated differently, depending on whether *the Commission itself neglected to convene* a hearing within the prescribed time.... [T]he challenged classification ... is arbitrary and irrational when measured against [the state's asserted goals].") (emphasis added).

Similarly, in the present case, the state's unexplained failure to run a background check on some HFOA-eligible defendants effectively classifies such defendants, otherwise identically situated for relevant purposes, into two classes "accorded radically disparate treatment." Despite the strength of Rickett's claim to have been subjected to irrationally disparate treatment in violation of the equal protection clause, however, I am compelled to agree with the majority that the caselaw of the Supreme Court and this Circuit, as it now stands, precludes a finding of an equal protection violation where the state's conduct is found to be merely negligent. *See, e.g., Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) ("[W]here the official action purports to be

in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws.").[4]

The magistrate below noted that "[i]f a prosecutor is lazy and misses a defendant's prior record, the district attorney can simply claim ignorance and that particular defendant will fall through the cracks in applying the supposedly 'mandatory' HFOA." *See* Magistrate's Report and Recommendation, March 1, 1989, at 15 (adopted by the district court on April 3, 1989) (hereinafter "Magistrate's Report"). The prosecutors' own testimony in this case indicated that they were aware that relevant information could be obtained through the kind of check which the district court found they did not perform. Given the easy availability of the relevant sources of information, it strains credulity to view any systematic failure to investigate such sources as arising from mere unintentional negligence. It is thus possible to envision factual scenarios in which such a failure might amount to "deliberate indifference" as defined in *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (holding that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment"). While the district court below did not find as a fact that the prosecutors deliberately closed their eyes to available sources of relevant information in this case, it did find

---

4. *E & T Realty v. Strickland,* 830 F.2d 1107 (11th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988), is binding precedent on this panel, and is thus properly cited by the majority. As a matter of principle, however, I have some doubt whether the majority opinion in *E & T Realty* correctly understood the nature of a rational-basis equal protection claim, for the reasons persuasively stated by Judge Kravitch's partial dissent in that case. *See* 830 F.2d at 1115–16. This panel, of course, is not at liberty to reconsider the holding in *E & T Realty,* and therefore I will not undertake to explore this issue in depth. It is worth noting, however, that the concept of negligence was found to have some relevance to the irrational violation of equal protection found in *Logan. See Logan,*

455 U.S. at 442, 102 S.Ct. at 1161 (separate opinion of Blackmun, J.) ("[T]he State [by its negligence] converts similarly situated claims into dissimilarly situated ones, and then uses this distinction as the basis for its classification."); *id.* at 443, 102 S.Ct. at 1161–62 (Powell, J., concurring in the judgment) (claimants "treated differently, depending on whether the Commission itself *neglected* to convene a hearing") (emphasis added). *Logan* thus creates substantial doubt in my mind as to whether *E & T Realty's* sweeping dicta to the effect that "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause," 830 F.2d at 1114, is a correct statement of the law in all contexts.

that no systematic policy or procedure requiring such background checks appears to exist in Alabama. *See* Magistrate's Report at 15.

The majority excuses the state's failure to consistently enforce the HFOA with the comment that "[n]o human institution is perfect." Maj. op. at page 1063. While this cannot be gainsaid, the comment would have more force if the officials in this case had at least made an attempt to check Battles's prior record. If the prior convictions had then remained undiscovered because of some human or computer error, it might be possible to view the state's conduct as diligent and reasonable. As noted above, however, the officials simply failed to consult sources which they *knew* possessed the relevant information. Rickett hardly demands "perfection" from the Alabama criminal justice system; he merely argues that some regularized system of consistent background checks with a verifiable paper trail be instituted to replace the present lackadaisical approach. While I conclude that the district court's factual finding that the officials in this case acted only negligently rather than intentionally is not clearly erroneous, I believe prosecutors in Alabama would be well advised to institute the kind of regularized procedure urged by Rickett. So long as they do not, the State of Alabama, in my view, will be skating close to the line of irrational—and unconstitutional—application of the HFOA.

## II. THE SELECTIVE PROSECUTION ISSUE

The majority relies heavily on *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), and argues that Rickett's claim may be treated as a selective prosecution complaint. I disagree. In my view, *Oyler* is inapplicable and Rickett's claim cannot properly be analyzed under the standards developed for selective prosecution cases. First, it is important to note that the West Virginia statute involved in *Oyler,* although also aimed at enhancing punishment of recidivists, functioned quite differently from Alabama's HFOA. Under the West Virginia law, prosecutors had to file a separate information following a defendant's conviction (although before sentencing), alleging the requisite prior convictions and in effect charging the defendant with the new and separate crime of being a recidivist. If the defendant denied he was the person named in the prior convictions, or simply remained silent, he was afforded a jury trial on the issue of identity. *See Oyler,* 368 U.S. at 449, 453, 82 S.Ct. at 502, 504. These factors explain *Oyler's* references to the legitimacy of a conscious state policy of selective enforcement in that case, and explain why *Oyler* has properly been seen as a seminal case in the selective prosecution area. *See Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (citing *Oyler*).[5]

5. The majority argues that *Oyler* is more than just a selective prosecution case and that it dealt "directly with mandatory recidivist statutes." Maj. op. at page 1063 n. 3. While I concede that reasonable minds might differ about the scope of *Oyler's* holding, I am not persuaded by the majority's reading of that case. The *Oyler* Court, it seems to me, did not assume *arguendo* that West Virginia's law was mandatory in the sense that Alabama's is. The Court noted the petitioners' *contention* that the West Virginia law "imposes a mandatory duty on the prosecuting authorities to seek the severer penalty." *Oyler,* 368 U.S. at 455, 82 S.Ct. at 505. The Court then observed that "[t]he denial of relief by West Virginia's highest court may have involved the determination that the statute ... is not mandatory. Such an interpretation would be binding upon this Court. However, we need not inquire into this point." *Id.* at 455 n. 10, 82 S.Ct. at 505 n. 10. Most significantly, the Court

subsequently noted that "[a]fter prisoners are confined in the penitentiary, the warden is granted discretion as to the invocation of the severer penalty. *Thus the failure to invoke the penalty in the cases cited by petitioners may reflect the exercise of such discretion." Id.* at 456 n. 11, 82 S.Ct. at 506 n. 11 (emphasis added). As discussed below, Alabama's law imposes a mandatory duty, not just on prosecutors as to the bringing of charges, but on the state courts as sentencers as well, whereas the petitioners' claim in *Oyler* was limited to the contention that the prosecutors were obligated to prosecute. In combination with the *Oyler* Court's subsequent discussion of selective prosecution, I believe that the fairest reading of *Oyler* precludes the sweeping impact assigned to it by the majority in this case.

Finally, even if *Oyler* were seen as involving a law fundamentally similar to the HFOA, it is distinguishable on narrower grounds. *Oyler*

The underlying premise of the special equal protection standard employed in selective prosecution cases[6] is the historic principle that, "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute ... generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). In explaining why prosecutorial decisions are "particularly ill-suited to judicial review," the Supreme Court has noted the variability of such factors as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte*, 470 U.S. at 607, 105 S.Ct. at 1530.

These factors have no relevance to the application of Alabama's HFOA. Under Alabama law, the "provisions [of the HFOA] are absolutely mandatory and are not discretionary." *Miliner v. State*, 414 So.2d 133, 135 (Ala.Crim.App.1981), *cert. denied*, 414 So.2d 133 (Ala.1982), *overruled in part on other grounds, Ex parte Williams*, 510 So.2d 135, 136 (Ala.1987). "[W]e do not believe the prosecutor has any discretion about whether or not to 'show' the prior convictions; if he is aware of the accused's record he must apprise the court of that fact." *Id.* The HFOA is equally nondiscretionary for the sentencing court. *See Holley v. State*, 397 So.2d 211, 215 (Ala.Crim.App.), *cert. denied*, 397 So.2d 217 (Ala.1981). Furthermore, the HFOA is not invoked by indictment or information. The HFOA "does not create a new crime. Rather, it merely enhances the punishment of the present crime...." *Coker v. State*, 396 So.2d 1094, 1098 (Ala.Crim.App.1981). The HFOA affords no right to jury trial on whether prior convictions are valid; where necessary, the judge simply conducts a sentencing hearing. *See* Ala.Code § 13A-5-10(a); *Holley*, 397 So.2d at 213-14.

For these reasons, while I agree with the majority that Rickett's claim fails under the controlling equal protection caselaw, I do not agree with the majority's reasoning with regard to *Oyler*, and I cannot regard *Oyler* as dispositive of the broad question whether states are free to arbitrarily and haphazardly administer supposedly mandatory recidivist sentencing laws.

### III. CONCLUSION

In *McLester v. Smith*, 802 F.2d 1330 (11th Cir.1986), this Court addressed a different legal challenge to the HFOA and specifically noted that the record revealed 78 instances in which prisoners eligible for mandatory life sentences under the HFOA were at that time serving sentences of less than life. *See id.* at 1333. How many

---

specifically relied in part on the fact that in that case, "[t]here [was] no indication that the[ ] records of previous convictions, which may not have been compiled until after the [recidivist] offenders had reached the penitentiary, were available to the prosecutors." *Oyler*, 368 U.S. at 456, 82 S.Ct. at 506. Here, by contrast, it is undisputed that such records were available to the prosecutors. *See* note 2, *supra*.

**6.** I have no quarrel with the majority's restatement of the test for selective prosecution claims. It is not disputed that such a claimant "must establish *first*, that he has been singled out for prosecution while others similarly situated have not ... and *second*, that the decision to prosecute was invidious or in bad faith because it was based upon an impermissible factor such as race." *United States v. Gordon*, 817 F.2d 1538, 1539 (11th Cir.1987) (emphasis in original), *vacated in part on other grounds*, 836 F.2d 1312 (11th Cir.1988), *cert. dismissed*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988); *see also*

*Wayte v. United States*, 470 U.S. 598, 608-10, 105 S.Ct. 1524, 1531-32, 84 L.Ed.2d 547 (1985). I agree that Rickett has not alleged or proved any specific, invidious discriminatory motive on the state's part and that his claim would thus fail under the above test.

Needless to say, however, an allegation of specific, invidious discriminatory motive is not required to make out a successful equal protection claim under the rational basis test. Rather, the lack of such an alleged motive merely precludes the application of "strict" or "heightened" scrutiny under the equal protection clause. *See, e.g., Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984) (race; strict scrutiny); *Mississippi University For Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (gender; heightened scrutiny); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage; strict scrutiny). Rickett makes no claim that strict or heightened scrutiny applies in this case.

other prisoners may have been sentenced before or since in violation of the HFOA's mandatory provisions is unclear, but the foregoing figure indicates that the number may be substantial.[7] Rickett's disparate treatment as compared to Battles's therefore cannot be dismissed as an isolated slip or error. Indeed, the state's failure properly to sentence Battles, while sharpening and dramatizing Rickett's claim, is less important than the fact that an indeterminate number of other defendants similarly situated to Rickett and those like him are apparently exempted, for mysterious and at best irrational reasons, from the supposedly mandatory application of the HFOA.

More than a century ago the Supreme Court observed:

> Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

*Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). In *Yick Wo,* of course, there was evidence of invidious discrimination on grounds of race, whereas the record in this case does not establish, and Rickett does not claim, that the state had any particular invidious ground for singling him out for disparate treatment. Even purely unexplained and irrational discrimination may offend the Constitution, however; that is the very premise of the rational basis test. To paraphrase a comment by Justice Stewart on the random imposition of the death penalty, irrationally disparate treatment is unfair in the same way that being struck by lightning is unfair. *See Furman v. Georgia,*

408 U.S. 238, 309, 92 S.Ct. 2726, 2762, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring). Surely one of the prime justifications for the rational basis component of the equal protection clause is the *risk* that seemingly random and haphazard treatment may conceal the "evil eye" and "unequal hand" of invidious discrimination. I find cogent and well taken Rickett's argument that the current laissez-faire enforcement of the HFOA in Alabama "opens a door for corruption in the justice system. It provides a temptation, a bargaining chip,[8] to gain an advantage and a desired outcome as to a particular individual's plea or sentence. It furnishes an avenue by which those affected by the law may be given radically disparate treatment." Appellant's Brief at 8 (footnote added).

For these reasons, while I reluctantly concur in the judgment in this case, I would reiterate this Court's warning in *McLester,* 802 F.2d at 1333 n. 2, that "[s]ince the HFOA is mandatory, the state of Alabama has a serious problem regarding its recidivist statute that we will be requested to address in some other case...." While I conclude that this is not that case, the State of Alabama should be placed on notice that it may not continue to administer the HFOA in the careless and haphazard fashion reflected by the record in this case.

---

**7.** This figure does not include those defendants who should have been, but were not, sentenced to terms other than life under the HFOA. It is also important to note that this figure was apparently obtained from the same kinds of computer records that are available to state prosecutors; thus, it presumably would not reflect prisoners whose criminal histories were unknown and undiscoverable when they were sentenced, but rather prisoners whose criminal histories simply were not checked by prosecutors before sentencing.

**8.** This may very well be what happened in this case. Battles pleaded guilty while Rickett chose to go to trial.